175 N.J. Super. 315 (1980)
418 A.2d 306
ROBERT RUBIN AND ELEANOR RUBIN, PLAINTIFFS,
v.
AMC HOME INSPECTION & WARRANTY SERVICE, A CORP., DEFENDANT.
Superior Court of New Jersey, Law Division Somerset County.
Decided July 1, 1980.
*317 Victor W. Stein, for plaintiffs.
Morris A. Halpern, for defendant (Cohen and Halpern, attorneys).
GAYNOR, J.S.C.
This matter is before the court on defendant's motion for summary dismissal of the complaint and plaintiff's cross-motion for summary judgment dismissing defendant's affirmative defenses. The issue presented by both motions is the effect of an exculpatory provision, in an agreement for a pre-purchase home inspection, as to negligent conduct in the performance of such inspection. It is our conclusion that the clause as contained in the agreement does not absolve the defendant from the results of its own negligence or operate to limit its liability.
Defendant is in the business of providing an inspection service to prospective purchasers of homes. According to a brochure prepared and disseminated by defendant, their experienced inspectors can provide a buyer with the straight facts on the condition of the prospective home so that an unemotional purchase may be made. The pamphlet indicates that all of defendant's inspectors are professionals who are thoroughly familiar with construction methods and materials by virtue of their *318 educational and professional experience, have completed certain training programs and are informed as to the latest developments in the home construction and maintenance field. Defendant counsels its prospective customers that a decision concerning the purchase of a home is not an easy task and should not be made without the assistance of expert advisors. It includes itself, with the realtor, appraiser, attorney and banker, as being able to provide a home buyer with professional counsel and advice, and in the brochure suggests to the prospective purchaser that when "you have selected the right home for you and your family, you will want to ascertain the true condition of its major elements and features and determine the likelihood of extensive repair or replacement expense after purchase," by means of defendant's inspection service.
Defendant also offers a home service plan for the repair or replacement of specified defects in those components of the home stated to be in sound or satisfactory condition in the inspection report. This additional service is provided under a separate Home Service Agreement for an additional fee.
In April 1978 plaintiffs contracted to purchase a residence in Watchung for a purchase price of $225,000. The contract was made subject to the obtaining of a home inspection report covering general conditions and structural integrity, including the condition of the roof. Accordingly, on May 2, 1978 plaintiffs engaged defendant, and Mrs. Rubin executed an Inspection Order Form as prepared and presented by defendant. This printed form was stated to be an agreement by which defendant undertook, for the specified fee, to perform a standard AMC inspection of the major structural, mechanical and electrical elements of the subject premises, subject to certain terms and conditions. The terms and conditions limited the inspection and report to visible and readily accessible major elements of the home, specifically excluded below-ground plumbing systems and matters relating to code compliance, and included the following provision, being Article 6 of the agreement:
The AMC inspection report is based on the inspector's personal opinion of the condition of the premises at the date of the inspection. Since all elements *319 undergo a constant state of change and deterioration, no accurate prediction of future condition can be made. However, for a fee and depending on the reported condition, AMC may, at its option, provide the client with a choice of prepaid first year of ownership service agreements to cover a portion of future repair or component replacement expense for owner-occupied, previously-owned houses. Fees and sample plans, if available, will be forwarded with the formal inspection report. Under all circumstances, if such a service plan is not available due to the advanced age or deteriorated condition of the premises or, if available, is not taken by the client, AMC's liability for this inspection is limited to the fee paid to AMC.
When the inspection was ordered Mrs. Rubin was advised by defendant's representative that the report would cover the condition of the property at the time of the inspection and that no prediction of future conditions could, or would, be made. She was also informed that a service agreement was available at an additional cost which would cover a portion of the cost of possible future repairs. However, no indication was made, nor did Mrs. Rubin understand anything in the order form to mean, that defendant would not be responsible for damages resulting from the negligence of the inspector in failing to detect and report any defect in the condition of the premises, or that, in the event of such negligence, defendant's liability would be limited to $175, the fee for the inspection. The report submitted by defendant stated that the house was basically structurally, mechanically and electrically sound, had been satisfactorily maintained and should only require average maintenance. With specific reference to the wood shake roof, the report indicated it to be in satisfactory over-all condition with an expected economic life span of 25-40 years. (The house was then reported to be about 12 years old.)
The inspection report contained the following provision, in small print on the bottom of the first page of the report:
While every reasonable effort was made to ascertain the present condition of the inspected property, AMC does not, under any circumstances, make any representations, guarantee or warranty as to the reported condition of the property's future condition. AMC strongly recommends that home buyers avail themselves of the available protection against unexpected future problems outlined in the heating, cooling, roof and termite sections of this report.
The roof section of the report did not include any such suggestion, except a printed reference to the protection offered by a homeowner's insurance policy.
*320 A sample copy of a home service agreement accompanied the inspection report with an explanation that while the report related to condition of the house at the time of the inspection the home service agreement offers protection against repair or replacement expense for a specified period after the transfer of title. The form letter offered two variations of this added service to plaintiffs and contained the statement that the "Service Agreement is offered to you in lieu of any representation or guarantee by AMC, either expressed or implied."
In reliance upon the inspection report submitted by defendant, plaintiffs completed the purchase of the property in August 1978. During the winter and spring of 1978-79 the roof developed a number of leaks. According to roofing experts called in by plaintiffs, the roof had been improperly installed in that, instead of its being a double course roof with 10" of the shingles being exposed to the weather, the shingles had been installed with a 12" exposure, thereby leaving a 2" gap where the roof was only a single course. It is claimed that such construction was defective, resulting in the water leakage experienced by plaintiffs, and was an observable condition at the time of the inspection by defendant. Replacement of the roof was considered to be the only method to remedy the defect.
Defendant contends that by virtue of the above-cited clause of the Inspection Order Form its liability, if any, for the repair or replacement of the leaking roof is limited to the sum of $175, being the fee paid by plaintiffs for the property inspection and report. It has offered this amount to plaintiffs and claims that its responsibility to plaintiffs has thereby been satisfied. Plaintiffs' position is that the provision relied upon by defendant does not relieve it of liability for acts of negligence committed by its employees in performing the property inspection and submitting a report thereof to the plaintiffs. In support of their motion to strike the affirmative defenses asserted by defendant, they claim that the terms of the Inspection Order Form are controlling as to their contractual relationship with defendant, and that any statements contained in the report or other forms subsequently sent to them by defendant are ineffective to change or *321 modify the agreement represented by the Inspection Order Form.
Exculpatory clauses in private agreements are generally valid and enforceable. Exceptions to this general rule apply when the exoneration adversely affects the public interest or when the parties to such an agreement are in unequal bargaining positions. Mayfair Fabrics v. Henley, 48 N.J. 483 (1967). However, an exculpatory clause will not absolve a contractor from his own negligent conduct unless the agreement clearly and plainly so provides. Without such unequivocable language it is considered that the minds of the parties did not intend that the exoneration include a party's own wrongdoing. Carbone v. Cortlandt Realty Corp., 58 N.J. 366 (1971); Freddi-Gail v. Royal Holding Corp., 34 N.J. Super. 142 (App.Div. 1955). Contracts of this nature are not favored in the law and are strictly construed against the party relying on them. McCarthy v. National Ass'n etc., 87 N.J. Super. 442 (Law Div. 1965).
In the context of a commercial lease, the court in Freddi-Gail, Inc. v. Royal Holding Corp., supra, in concluding that the exculpatory clause in a lease was ineffective to absolve the landlord from the results of its own negligent conduct, said:
According to the weight of authority at the common law, an exculpatory clause exempting a landlord from liability for damage by water or some other cause, without clearly adverting to the matter of negligence on the landlord's part does not absolve him from his own negligence, at least from negligence of an affirmative sort. It is said that the minds of both parties probably never intended such absolution. The strict construction thus given to the clause is in part to be laid to the disfavor with which these authorities look upon any possible attempt by a landlord to secure exoneration from his own wrongdoing.
A similar determination was made in Carbone v. Cortlandt Realty Corp., supra, wherein the court observed:
The exculpatory clause in the instant case does not clearly advert to the landlord's negligence. We hold that it does not plainly indicate that the parties did intend to immunize the landlord from liability for its own negligence; and there being no indication elsewhere in the instant lease of any such understanding, Mayfair Fabrics v. Henley, supra, 48 N.J., at 485-489, it cannot be said the parties intended to exonerate the landlord from such liability.
Contract provisions limiting a contractor's liability to a specified sum have likewise been upheld where there is no transgression of public policy or inequality of bargaining position. Foont-Freedenfeld *322 Corp. v. Electro-Protective Corp., 126 N.J. Super. 254 (App.Div. 1973), aff'd 64 N.J. 197 (1974); Abel Holding Co. v. Amer. Dist. Tel. Co., 138 N.J. Super. 137 (Law Div. 1975), aff'd 147 N.J. Super. 263 (App.Div. 1977); Globe Home Improve. Co. v. Perth Amboy C. of C. Credit Rating Bureau, 116 N.J.L. 168 (E & A 1935). See, also, Farris Engineering Corp. v. Service Bureau Corp., 276 F. Supp. 643 (D.N.J. 1967). While such exculpatory clauses were considered valid and enforceable in limiting the liability of the contractor for losses sustained as a result of its own negligence, in each of these cases the terms of the agreement clearly adverted to and included liability based upon negligent conduct by the contractor. The validity of this type of agreement is founded upon an effectuation of the intent of the parties as determined from the plain and unambiguous terms of the contract. Abel Holding Co. v. American Dist. Tel. Co., supra.
In Foont-Freedenfeld v. Electro-Protective Corp., supra, plaintiff sought to recover for losses allegedly sustained as the result of a malfunctioning burglar alarm system. The contract under which defendant installed and maintained the alarm system in plaintiff's premises included the following provision:
It is agreed by and between the parties hereto that the Contractor is not an insurer; that the payments hereinbefore named are based solely on the value of the services provided for herein; that, from the nature of the services to be rendered, it is impracticable and extremely difficult to fix the actual damages, if any, which may proximately result from a failure on the part of the contractor to perform any of its obligations hereunder; that, in case the failure of the Contractor to perform any of its obligations hereunder, and a resulting loss to the Subscriber, the Contractor's liability hereunder shall be limited to and fixed at a sum equal to ten percent of the annual service charge hereinabove provided for, but in no event amounting to less than the sum of fifty dollars, as liquidated damages, and not as a penalty, and this liability shall be exclusive.
In affirming the entry of a partial summary judgment limiting defendant's contractual obligation to $50, the court noted that plaintiff entered into the contract with full knowledge of the above-quoted clause and its effect, and that the contract did not make defendant an insurer for every loss caused by theft.
The case of Abel Holding Co. v. Amer. Dist. Tel. Co., supra, involved a fire alarm system which failed to operate and signal occurrence of a fire. The contract providing for the installation *323 and servicing of the alarm system contained a clause similar in substance to that quoted from the agreement in the Foont-Freedenfeld case, together with the following proviso:
... That the provision of this paragraph shall apply if loss or damage, irrespective of cause of origin, results directly or indirectly to persons or property from performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, of the Contractor, its agents or employees....
In Globe Home Improvement Co. v. Perth Amboy, etc., supra, the court precluded recovery against a credit bureau for having negligently omitted information from a credit report, because of the effectiveness of a clause in the contract between the parties which provided that such report "is based upon information obtained in good faith by the agent from sources deemed reliable, the accuracy of which, however, is in no manner guaranteed."
The contract provision in Farris Engineering Corp. v. Service Bureau Corp., supra, which limited defendant's liability to the amount paid by plaintiff for an inventory computation, included the following:
The customer agrees that notwithstanding the form in which any legal or equitable action may be brought by the Customer against SBC, SBC's liability, if any, arising out of or in any way related to its performance of the services provided herein, including errors which are due solely to malfunction of SBC controlled machines or failure of SBC operators, SBC programmers, or SBC programs, shall be limited in ....
The agreement governing the obligations of the parties in the present case is as contained in the Inspection Order Form. Neither the inspection report nor the letter accompanying the report constitute any part of the agreement between plaintiffs and defendant. As unilateral statement of defendant, the content of these documents are not binding upon plaintiffs. Thus, the disclaimers of any guarantee or warranty as contained in the inspection report and the accompanying letter are ineffective as modifications or amplifications of the contractual responsibilities of the parties.
The section of the Inspection Order Form relied upon by the defendant as absolving it of liability in excess of the $175 fee paid by the plaintiffs is the following portion of Article 6:

*324 Under all circumstances, if such service plan is not... taken by the client, AMC's liability for this inspection is limited to the fee paid to AMC.
This provision of the agreement is not a clear and plain indication that the stated limitation of liability is applicable to negligent conduct by defendant, its employees or representatives, in performing the inspection, and reporting upon the condition, of the designated property. It is far short of the specification of acts of the contractor subject to such exoneration as contained in the agreements involved in the cases previously cited. A strict construction of this clause of the contract, which was prepared and submitted to plaintiffs by defendant, does not permit a conclusion that it evidences the intent of both parties that the stated limitation of liability apply to negligent conduct of the defendant.
Accordingly, defendant is not entitled as a matter of law to a summary judgment dismissing the complaint upon its tender of the fee paid by plaintiffs for the property inspection and report.
The conclusions reached herein also require the granting of plaintiffs' motion to strike the affirmative defenses based upon the exculpatory provision contained in Article 6 of the Inspection Order Form and the guarantee or warranty disclaimer as set forth in the inspection report.