ROBERT L. BASS, M.D., APPELLANT AND CROSS-APPELLEE, V. KENNETH R. DALTON, M.D., APPELLEE AND CROSS-APPELLANT.

329 N.W.2d 115

Filed January 21, 1983. No. 81-803.

Donald R. Treadway for Treadway & Bird, P.C., for appellant.

Philip T. Morgan for Morgan & Morgan, for appellee.

Krivosha, C.J., Boslaugh, McCown, White, Hastings, and Caporale, JJ., and Moran, D.J.

Caporale, J.

Plaintiff-appellant, Robert L. Bass, M.D., appeals from the judgment of the District Court distributing certain partnership assets to defendant-appellee, Kenneth R. Dalton, M.D., who cross-appeals, claiming the trial court erred in directing an accounting of the partnership's income, in assessing the expenses of obtaining same to Dr. Dalton, and in the taxation of the costs of suit to him. We affirm as modified.

Dr. Bass assigns as error (1) the trial court's finding that article XVII of the agreement in question was unambiguous, and (2) the distribution of the partnership assets to Dr. Dalton without any compensation to Dr. Bass therefor.

An action for the dissolution of a partnership and an accounting between partners is one in equity and is reviewed in this court de novo on the record. Imposed upon us in such a case is the duty to reach an independent conclusion without reference to the findings of the District Court, bearing in mind and according respect and weight to the trial court's superior position as the original finder of fact. *Von Seggern v. Von Seggern,* 196 Neb. 545, 244 N.W.2d 166 (1976); *Byram v. Thompson,* 154 Neb. 756, 49 N.W.2d 628 (1951).

In 1958 Dr. Bass joined Dr. Dalton in the practice of medicine at Genoa, Nebraska, where the latter had been practicing since the mid-1940s. During the course of their relationship these two physicians entered into three agreements. The last agreement, the one in question, dated October 6, 1965, designates Dr. Dalton as the first party and Dr. Bass as the second party and, to the extent relevant here, provides as follows:
"XVI.
"It is understood and agreed that if first party

shall decide to retire or in the event of his death, second party shall pay first party or his heirs $40,000.00 representing the value and entire interest of the personal property of said first party.

"XVII.

"It is understood and agreed that if said second party decides to terminate this partnership agreement or fails to perform or in the event of his death that all personal property and interests of whatever kind or nature shall revert to party of the first part.

"XVIII.

"It is understood and agreed that the party of the second part shall continue to carry and pay for personally life insurance in the amount of $20,000.00 made payable to the party of the first part and upon the death of the second party the first party will pay over to second party's wife or heirs said $20,000.00, together with an additional $20,000.00 which shall represent and pay for all of second party's interest in the business, including all personal property, accounts receivable, good will and going concern without any further accounting or obligation on the part of the first party."

Dr. Bass voluntarily left the partnership on May 31, 1980.

In his amended petition Dr. Bass sought a dissolution of the partnership, an accounting for and distribution to him of one-half of all the partnership assets, and other equitable relief. In the course of the proceedings Dr. Bass expanded, by motion, his request for an accounting to include the partnership's "interests, profits and outstanding accounts receivable as of May 31, 1980 . . . ."

Dr. Bass' major claim is that article XVII of the agreement, when read with its other provisions, is ambiguous and must be judicially construed. The claim is without merit.

The words used in article XVII must be given their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. *Bishop*

*Buffets, Inc. v. Westroads, Inc.,* 202 Neb. 171, 274 N.W.2d 530 (1979); *Rogers v. Neiman,* 187 Neb. 582, 193 N.W.2d 266 (1971). It is true, as argued by Dr. Bass, that the contract must be viewed as a whole. *Dockendorf v. Orner,* 206 Neb. 456, 293 N.W.2d 395 (1980). It is also true, however, that courts are not free to interpret contracts which are couched in clear and unambiguous language; parties are bound by the terms of a contract even though their intent may be different from that expressed by the agreement. *Timmerman Bros., Inc. v. Quigley,* 198 Neb. 129, 251 N.W.2d 877 (1977). The clear meaning of article XVII is that, although the consequences would be different if the partnership were terminated by the death or retirement of Dr. Dalton, termination of the partnership by Dr. Bass resulted in setting over to Dr. Dalton the "personal property and interests" of the partnership without compensation to Dr. Bass therefor. Although the use of the word "revert" may not have been as artful as might be desired, it cannot be said that it renders article XVII ambiguous and subject to interpretation. The trial court was entirely correct in this respect.

We next turn our attention to Dr. Dalton's cross-appeal. The undistributed net profits, under the terms of the agreement in question providing that such shall be divided equally between the parties, are not properly an asset of the partnership but, rather, are a debt of the partnership to the partners. See Neb. Rev. Stat. § 67-340 (Reissue 1981). The trial court was therefore correct in ordering an accounting and in directing a distribution to plaintiff of his share of the net profits or income as of May 31, 1980. The accounting was necessary and beneficial to each of the partners. Accordingly, the expense of obtaining same is to be borne equally by the two partners.

In actions of the type presented here, the court may award and tax costs and apportion the same between the parties as it, in its discretion, may deem

right and equitable. Neb. Rev. Stat. § 25-1711 (Reissue 1979). See *Langel Chevrolet-Cadillac v. Midwest Bridge, ante* p. 283, 329 N.W.2d 97 (1983). In view of the fact Dr. Bass did not succeed in supporting his major claim, and in view of the foregoing apportionment of the expense of obtaining the accounting, we determine that Dr. Bass shall pay the costs of this suit.

AFFIRMED AS MODIFIED.