DELORIS BEDROSKY AND TED DUNLAP, APPELLANTS, V. DOUGLAS E. HINER, DOING BUSINESS AS HINER PROPERTIES, APPELLEE.

430 N.W.2d 535

Filed October 21, 1988.   No. 87-071.

Mary Cannon Veed and Thomas L. Steele, of Matthews & Cannon, P.C., for appellants.

Gerald L. Friedrichsen, of Fitzgerald & Brown, for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

HASTINGS, C.J.

Plaintiffs have appealed from the judgment of the district court which sustained the motion of the defendant for summary judgment. This was an action resulting from a fire in a building owned by the defendant, a portion of which was leased to the plaintiffs. Plaintiffs sought damages for destruction of their property.

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Wilson v. F & H Constr. Co.,* 229 Neb. 815, 428 N.W.2d 914 (1988); *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.,* 229 Neb. 160, 425 N.W.2d 872 (1988).

Moreover, summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to

judgment as a matter of law. *J. J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. 580, 428 N.W.2d 185 (1988).

In November 1976, plaintiff Bedrosky leased the first floor of a building from defendant to house her art gallery. Plaintiff Dunlap became associated with Bedrosky in March 1984, and became a full partner in the gallery in September 1984. According to Bedrosky, the defendant orally assured her before she signed the lease that the sprinkler system was in working order. The lease contained the following language:

> 5. Lessee has examined said premises prior to his acceptance and the execution hereof and is satisfied with the physical condition thereof, including all equipment and appurtenances, and his taking possession thereof shall be conclusive evidence of his receipt thereof in satisfactory order and repair, except as otherwise specified hereon, and Lessee agrees and admits that no representation as to the condition or repair hereof has been made by the Lessor or his agent which is not herein expressed or indorsed hereon; and likewise agrees and admits that no agreement or promise to decorate, alter, repair, or improve said premises including all equipment and appurtenances, either before or after the execution hereof, not contained herein, has been made by Lessor or his agent.
>
> . . . .
>
> 10. All personal property in the leased premises shall be at the risk of the Lessee only and the Lessor shall not be or become liable for any damage to said personal property, to said premises or to said Lessee or to any other persons or property caused by water leakage, steam, sewerage, gas or odors or for any damage whatsoever done or occasioned by or from any boiler, plumbing, gas, water, steam or other pipes or any fixtures, equipment or appurtenances whatsoever, or for any damage occasioned by water, snow or ice, being upon or coming through the roof, sky-light, trap door, or otherwise, or for any damage arising from any act or neglect of other tenants, occupants, or employees of the building in which the leased premises are situated or arising by reason of the use of, or any defect in,

the said building or any of the fixtures, equipment or appurtenances therein, or by the act or neglect of any other person or caused in any other manner whatsoever.

On January 19, 1985, as alleged in plaintiffs' second amended petition, "a fire of uncertain origin began in the upper two floors of the six story building." The fire spread to the elevator shaft, as plaintiffs allege, fell to the basement, and spread to the first floor, which was the space leased to the plaintiffs.

The essence of plaintiffs' claim is that defendant, in violation of certain regulations of the State Fire Marshal's office, failed to enclose the elevator shaft and to install fire doors, and, in contravention of his representation, the defendant failed to keep the sprinkler system in proper working order. Plaintiffs also alleged a failure to secure the building against trespassers.

Defendant's answer denies generally the allegations in the plaintiffs' petition and alleges further that the provisions of the lease exclude recovery for loss of personal property.

Plaintiffs assign as error: (1) The court ruled that there were no genuine issues of fact; (2) the court ruled that the defendant's acts were within the scope of the lease's exculpation clause; and (3) the court upheld the validity of the exculpation clause as not opposed to public policy.

The sole issue for this court to determine is whether the exculpatory clause of the lease is effective to relieve the defendant from all liability in this instance.

Plaintiffs' arguments focus on paragraph 10 of the lease. Essentially, plaintiffs argue that the exculpatory language cannot be construed to relieve the defendant of liability and that even if such a construction was warranted, an unconscionable result would ensue.

Defendant, on the other hand, argues that the exculpation clause was plain and unambiguous. Therefore, he argues, there is no need to resort to between-the-lines interpretations or public policy to ascertain the true intent of the parties when they agreed upon and signed the lease contract.

Of particular concern to the plaintiffs is the language in paragraph 10 of the lease providing that the lessor shall not be liable for damage to personal property caused "by the act or

neglect of any other person or caused in any other manner whatsoever." This language follows a long list of other events, mostly natural hazards and damage caused by occupants, for which the lessor is not liable. The plaintiffs argue that the final clause must be read "to include only the general categories of injury previously enumerated" (brief for appellants at 11), and not negligence or intentional misrepresentation on the part of the defendant. Otherwise, argue plaintiffs, if the clause is read literally and includes a release from liability for damage occurring in *any* manner (including negligence or misrepresentation by the defendant), "the clause would negate every obligation or commitment of the landlord altogether, and entirely destroy the mutuality of the lease contract." *Id.*

A lease is to be construed as any other contract. *Newman v. Hinky Dinky*, 229 Neb. 382, 427 N.W.2d 50 (1988); *Chadd v. Midwest Franchise Corp.*, 226 Neb. 502, 412 N.W.2d 453 (1987); *Omaha Country Club v. Dworak*, 186 Neb. 336, 183 N.W.2d 264 (1971). Thus, we apply principles of contract construction to ascertain the scope and meaning of the lease. The plaintiffs urge us to adopt a nonliteral, nonstrict construction of the lease. However, before we determine *how* to interpret the lease, we must first determine whether interpretation is even necessary. Courts are not free to interpret contracts which are couched in clear and unambiguous language. *Bass v. Dalton*, 213 Neb. 360, 329 N.W.2d 115 (1983).

A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties urge opposing interpretations does not necessarily indicate that the contract is ambiguous. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988); *Lueder Constr. Co. v. Lincoln Electric Sys.*, 228 Neb. 707, 424 N.W.2d 126 (1988); *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). A party may not pick and choose among the clauses of a contract, accepting only those that advantage it; the contract's meaning is to be ascertained by reading the contract as a whole. *Fisbeck v. Scherbarth, Inc., supra*; *Lueder Constr. Co., supra*; *Dockendorf v. Orner*, 206 Neb. 456, 293 N.W.2d 395 (1980). A

provision of a contract is ambiguous when, considered with other pertinent provisions as a whole, it is capable of being understood in more senses than one. *Luschen, supra*; *Shadow Isle, Inc. v. Granada Feeding Co.*, 226 Neb. 325, 411 N.W.2d 331 (1987); *Smith v. Wrehe*, 199 Neb. 753, 261 N.W.2d 620 (1978).

We must also keep in mind that there is a strong presumption that a written instrument correctly expresses the intention of the parties to it. *J. J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. 580, 428 N.W.2d 185 (1988); *Ridenour v. Farm Bureau Ins. Co.*, 221 Neb. 353, 377 N.W.2d 101 (1985). Moreover, parties are bound by the terms of the contract even though their intent may be different from that expressed in the agreement. *Rumbaugh v. Rumbaugh*, 229 Neb. 652, 428 N.W.2d 500 (1988); *Bass v. Dalton, supra.*

On its face, the lease contract appears to clearly dictate the result reached by the trial court. The property was rented to the plaintiff "as is w/sign, A.C., 2 overhead space heaters, all of which is as is and not warrented [sic] or serviced by lessor." Paragraph 5, concerning the "Condition of Premises," provides that the lessee (plaintiff) has examined and is satisfied with the condition of the property and that no representations as to the condition of the property have been made by the lessor (defendant) to the lessee. The lease then provides in paragraph 10 that the lessor shall not be liable for damage to the lessee's personal property caused by "water leakage, steam, sewerage, gas or odors," or from "any boiler, plumbing, gas, water, steam or other pipes or any fixtures, equipment or appurtenances whatsoever," or from "water, snow or ice," or from "any act or neglect of other tenants, occupants, or employees of the building," or arising from "the use of, or any defect in, the said building . . . fixtures, equipment or appurtenances," or from the "act or neglect of any other person or *caused in any other manner whatsoever*." (Emphasis supplied.)

The plaintiffs' petition alleged that the defendant's negligence and intentional misrepresentation as to the fire safety of the building caused the damage to their property. The language in paragraph 5 plainly disposes of the misrepresentation claim. The language in paragraph 10 also

settles the misrepresentation question, as well as releasing the defendant from liability for his alleged negligence and breach of contract. The words used in the contract must be given their plain and ordinary meaning, as ordinary, average, or reasonable persons would understand them. *Rumbaugh v. Rumbaugh, supra*; *Bass v. Dalton, supra*. Read in its plainest, clearest sense, the lease provides that the defendant is not responsible for damage arising from any defect in the building, fixtures, equipment, or appurtenances (which would include the sprinklers), or from any damage caused by the act or neglect of *any other person* (including himself) or caused in any other manner whatsoever. Read in this manner—that is, taking the language of the lease in its plain and ordinary meaning—the lease places no liability on the defendant for the damage to plaintiffs' property.

A written contract which is expressed in clear and unambiguous language is not subject to interpretation or construction. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988); *Lueder Constr. Co. v. Lincoln Electric Sys.*, 228 Neb. 707, 424 N.W.2d 126 (1988); *State ex rel. NSBA v. Douglas*, 227 Neb. 1, 416 N.W.2d 515 (1987); *Shadow Isle, Inc., supra*; *Kansas-Nebraska Nat. Gas Co. v. Swanson Bros.*, 215 Neb. 398, 338 N.W.2d 774 (1983). The practical construction put upon a lease contract cannot control the express, unambiguous provisions of the instrument itself. *Ames v. George Victor Corp.*, 228 Neb. 675, 424 N.W.2d 106 (1988).

Nevertheless, plaintiffs argue that the lease must be interpreted by this court. According to plaintiffs, the lease should be read so that the last clause in paragraph 10 ("by the act or neglect of any other person or caused in any other manner whatsoever") refers not to *any* event or act, but only to an event or act which belongs to the same general category of events and acts described in the remainder of paragraph 10.

If the plaintiffs' position is correct, of course, the order of the lower court must be reversed. When it is established that a contract is ambiguous, the meaning of its terms is a matter of fact to be determined in the same manner as other questions of fact; in such a situation, summary judgment is improper. *Lueder Constr., supra*; *Luschen Bldg. Assn. v. Fleming Cos.*,

226 Neb. 840, 415 N.W.2d 453 (1987).

The plaintiffs do not specifically argue that the lease is ambiguous, however. Rather, they appear to urge a nonliteral interpretation, based on public policy. To construe the lease according to its plain language—that is, to exempt the defendant from liability in this case—would create an unconscionable result, according to plaintiffs.

This court has traditionally been reluctant to void contractual clauses on public policy alone. As in *Occidental Sav. & Loan Assn. v. Venco Partnership*, 206 Neb. 469, 479, 293 N.W.2d 843, 848 (1980), "The only remaining basis for declaring the questioned clauses invalid would be a finding that they are repugnant to public policy. This should not be done lightly or without sufficient compelling reason." The court then quoted 17 C.J.S. *Contracts* § 211 at 1022 (1963): "Persons should not be unnecessarily restricted in their freedom to make their own contracts; and, therefore, the court should act cautiously and not hold contracts void as being contrary to public policy unless they are clearly and unmistakably so." See, also, *Mayer v. Howard*, 220 Neb. 328, 370 N.W.2d 93 (1985); *Beaver Lake Assn. v. Beaver Lake Corp.*, 200 Neb. 685, 264 N.W.2d 871 (1978); *Brisbin v. E. L. Oliver Lodge No. 335*, 134 Neb. 517, 279 N.W. 277 (1938). (Courts should be cautious in holding contracts void on the ground that the contract is contrary to public policy; to be void as against public policy, the contract should be quite clearly repugnant to the public conscience.)

The specific issue of whether the lessor may include a provision in a commercial lease exempting him from liability apparently has not been directly decided by the Nebraska court. The Uniform Residential Landlord and Tenant Act, which applies only to residential leases, contains an express prohibition against exculpatory clauses or limitations on the landlord's liability. (Neb. Rev. Stat. § 76-1415 (Reissue 1986).) However, no such statutory prohibition exists for commercial leases, presumably because while a residential tenant must be protected against unfair disparity in bargaining power, no such inequality of positions exists in the business setting. A lessee under a commercial lease, such as plaintiff Bedrosky here, has

the opportunity to "shop around" and negotiate for the terms of the arrangement, an opportunity which may not be available to the residential lessee.

Other state courts considering the issue of exculpatory clauses in commercial leases have varied in their responses, due to varying statutory schemes, ideas about public policy, and the language of the clauses themselves. See, *J. B. Stein & Co. v. Sandberg*, 95 Ill. App. 3d 19, 419 N.E.2d 652 (1981) (exculpatory clause in commercial lease which unambiguously exculpated lessor for his own negligence was valid); *Princeton Sportswear Corp. v. H & M Assoc.*, 335 Pa. Super. 381, 484 A.2d 185 (1984), *rev'd on other grounds* 510 Pa. 189, 507 A.2d 339 (1986) (exculpatory clause in commercial lease relieving lessor of liability for damage to personal property valid; clause did not violate public policy, commercial lease related entirely to parties' own private affairs, and no disparity in bargaining power between parties); *Rubin v. AMC Home Inspection & Warr. Serv.*, 175 N.J. Super. 315, 418 A.2d 306 (1980) (exculpatory clause will not absolve contractor from his own negligent conduct unless agreement clearly and plainly so provides); *Barnes v. Pearman*, 163 Ga. App. 790, 294 S.E.2d 619 (1982) (provision that lessee would release lessor from any and all damage to person or property was void as against public policy as enacted in statutes). See, also, 52 C.J.S. *Landlord & Tenant* § 423(2) (1968) (the parties may exempt the lessor from liability for damages to the tenant's property sustained through the negligence of the lessor and other persons, and in the absence of statutes providing otherwise, such agreements are not void as against public policy).

There is no indication in the evidence which was before the court on motion for summary judgment that Bedrosky fell victim to a disparity in bargaining power. She voluntarily entered into the lease agreement and signed it, indicating that she agreed with its terms. The language of the lease plainly exculpated the defendant from liability for damage to plaintiffs' property, "by the act or neglect of any other person or caused in any other manner whatsoever." The plain language of that phrase does not permit us to read into its meaning a provision limiting the exclusion to any of the specific causes

previously enumerated in the lease. Furthermore, we do not find the language of the exculpatory clause to be a clear contravention of public policy.

The judgment of the district court is affirmed.

AFFIRMED.