CHARLES L. ELSON, APPELLEE, V. CHARLES A. POOL AND
WILCHAR, INC., A NEBRASKA CORPORATION, APPELLANTS.
455 N.W.2d 783

Filed May 25, 1990.    No. 88-547.

Thomas J. Walsh, Jr., of Walsh, Fullenkamp & Doyle, for appellants.

No appearance for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The plaintiff, Charles L. Elson, commenced this action against the defendants, Charles A. Pool and Wilchar, Inc., to collect commissions for nine separate sales of residential real estate in Sarpy County, Nebraska. The plaintiff alleged that he had sold the real estate pursuant to a "Broker/Independent Contractor Agreement" between the defendants and himself and that the corporation and Charles A. Pool, personally, owed him the commissions.

In their amended answer, the defendants admitted that the plaintiff had been hired as an independent contractor by the defendant Pool pursuant to the alleged agreement, but denied that the plaintiff had been hired by anyone other than Wilchar,

Inc. They admitted that sales commissions were owed for two homes, 703 Joseph Drive and 400 Summerset Drive, sold by the plaintiff, but denied that any further commissions were owed to the plaintiff.

The defendants further alleged that on or about June 8, 1987, Pool had terminated the agreement between the parties, although he had informed the plaintiff that he would be allowed to close some of the sales that were in process as of June 8, 1987. On June 12, 1987, Pool discovered that the plaintiff had signed the sellers' names on some real estate closing documents for a sale the plaintiff was closing; that the plaintiff's actions constituted a breach of paragraph 6 of the agreement, in which the plaintiff agreed to conduct himself so as to further the best interest of the broker; that Pool then decided not to allow the plaintiff to close any more sales; and that Pool then assigned the responsibility for closing all pending sales to persons other than the plaintiff and paid the listing commissions for those sales to the persons who performed the closings, as provided in the agreement. The defendants further alleged that the agreement was prepared by the plaintiff and another agent.

At the close of all of the evidence, the trial court denied both the plaintiff's and the defendants' motions for directed verdicts; however, the next day, the trial court made "Findings In Law" which granted a directed verdict to the plaintiff as to six of the nine sales of real estate. The trial court found as a matter of law (1) that the contract between the parties was valid; (2) that the plaintiff had breached paragraph 6 of the contract on June 12, 1987, and as a result of the breach the plaintiff was not entitled to recover listing commissions on the sales of 905 Creighton Road, 504 Oakwood Drive, and 805 Wilshire Lane; (3) that the plaintiff was entitled to recover a listing commission for 815 Wilshire; (4) that the plaintiff was entitled to recover commissions for 703 Joseph Drive and 400 Summerset Drive (the two sales on which the defendants admitted commissions were owed); (5) that the defendants were entitled to an offset of $164.07 for expenses under paragraph 3D of the contract; (6) that the plaintiff was entitled to commissions for 9603 South 20th Street, 1309 Offutt Boulevard, and 9505 Briarwood Lane;

and (7) that there was an issue of fact regarding the amount of brokerage commission due the defendants, which should be submitted to the jury for a special verdict.

After receiving the jury's special verdict, the trial court entered judgment against the defendants, jointly and severally, in the amount of $9,272.04, plus prejudgment interest of $362.97. The trial court later reduced the prejudgment interest to $269.44.

The defendants have appealed to this court and have assigned as error the trial court's finding that as a matter of law (1) the plaintiff was entitled to recover listing commissions on the sales of 1309 Offutt Boulevard and 9505 Briarwood Lane, (2) Pool was personally liable to the plaintiff, and (3) the defendants owed prejudgment interest.

"When reasonable minds can draw but one conclusion from the facts, the trial court must decide the issue as a matter of law and not submit it to a jury." *Krance v. Faeh*, 215 Neb. 242, 245, 338 N.W.2d 55, 58 (1983).

Since we consider the trial court's findings of law to be a directed verdict for the plaintiff as to six of the nine real estate sales, we review the evidence in the light most favorable to the defendants. See *Hilt Truck Line v. Pullman, Inc.*, 222 Neb. 65, 382 N.W.2d 310 (1986). However, we are obligated to reach an independent conclusion on issues of law. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988).

The record shows that on January 27, 1987, the plaintiff entered into an agreement with "Charles A. Pool, Broker of record, Wilchar Real Estate, Inc., and President, William Charles Homes, hereafter referred to as broker," to work as a real estate sales agent. The plaintiff agreed to sell homes for the broker as an independent contractor on a commission basis.

The sales involved in this appeal were preowned homes. Commission was to be paid on the following basis:

> All commissions will be a percentage of final selling price and will be payable to agents as soon as practicable after closing of the sale.
>
> . . . .
>
> PREOWNED HOMES
> Listing Commission      As agreed
> Sales Commission      As agreed

All outside broker commissions earned by mentioned agents will be divided equally between the broker and the agent involved.

Listing commissions as stated are based on the assumption that all new construction listings will be jointly and equally shared by the two herein mentioned agents.

Sales commissions will be paid to the principal procuring agent.

The contract could be terminated with 30 days' written notice by either broker or agent. It provided in the event of termination by either party all listings would remain the property of the broker, and "[f]ull sales commissions will be paid at closing on pending sales; however, listing commissions on pending sales will be paid to the agent assigned responsibility for closing."

The plaintiff testified that he and Pool had discussed commissions on preowned homes, that Pool told the plaintiff that Pool wanted only $300 to $400 to cover his company's expenses, and that the plaintiff could keep anything over the company's expenses. Pool testified that he did not agree to that, and that the agreement was that 3.5 percent needed to be charged on preowned homes to satisfy the possibility of the property's being sold by a cooperating broker, plus $300 to satisfy the company's expenses and agent's time, and if the agent was able to get more than that, they would split it in half.

On June 8, 1987, Pool terminated the plaintiff's association with Wilchar. Later, Pool and the plaintiff agreed that the plaintiff would be allowed to close some of the sales on which he had been working.

One of the sales that plaintiff was to close was a home located on 1309 Offutt Boulevard which he had listed. The property was sold by an agent of another real estate company. It sold for $58,900. The listing agreement shows a sales commission of 7 percent, of which the selling broker received half.

The closing was scheduled to be held on June 12, 1987; however, the sellers of the property lived in Florida and would not be in Bellevue until June 13.

Pool went to the closing on June 12 and discovered that the plaintiff, intending to close as scheduled, had signed the sellers'

names and notarized the signatures on some of the closing documents, including the deed, an affidavit, an authorization to pay the agent, and an IRS filing. (The plaintiff admitted this in his testimony at trial.) Pool delayed the closing until he could get the documents in question reissued and signed by the sellers.

According to Pool's testimony, the sale was partially closed on June 12, and the closing was completed by him several days later after the documents were signed and notarized by the sellers, the purchasers received the deed, and the sellers received their proceeds. The plaintiff testified he thought the closing was completed on June 12, although the sellers did not receive the purchase price then and no deed passed on June 12.

After the experience with 1309 Offutt, Pool took over the closing of the property at 9505 Briarwood, which was property the plaintiff had listed but had not sold. The plaintiff admitted that he did not close the sale of 9505 Briarwood, which closed on June 30, 1987.

The words used in a contract must be given their plain and ordinary meaning, as the ordinary, average, or reasonable person would understand them. *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988). Read in this manner, the contract provides in the event of termination by either party, listing commissions would be paid to the agent responsible for closing the sale. The evidence shows the plaintiff understood this provision, because he testified that he was only claiming sales commissions, not listing commissions, for the property on which the defendants admitted commissions were owed, because the sales were closed more than 30 days after the plaintiff was terminated.

The evidence is clear that the plaintiff did not close the sale of the property at 9505 Briarwood, and regardless of whether he closed the property at 1309 Offutt, " ' "[a] commission cannot be collected by the agent for his services if he has willfully disregarded, in a material respect, an obligation which the law devolves upon him by reason of his agency." ' " *Walker Land & Cattle Co. v. Daub*, 223 Neb. 343, 350, 389 N.W.2d 560, 565 (1986) (quoting *Vogt v. Town & Country Realty of Lincoln, Inc.*, 194 Neb. 308, 231 N.W.2d 496 (1975)). The plaintiff's attempt to close the sale of 1309 Offutt with documents on

which he signed the sellers' names and then notarized the sellers' signatures violated the obligations imposed on him by law.

It is well established that a contract written in clear and unambiguous language "is not subject to construction and must be enforced according to its terms." *Barner v. City of Lansing*, 27 Mich. App. 669, 671, 183 N.W.2d 877, 878 (1970). See, also, *Bedrosky, supra*, and cases cited therein.

These rules compel the conclusion, as a matter of law, that the plaintiff was not entitled to listing commissions on the sales of 1309 Offutt and 9505 Briarwood. Furthermore, as a matter of law, Pool was personally liable for any commissions due the plaintiff under the contract, because the contract was between the plaintiff as agent and "Charles A. Pool . . . hereafter referred to as broker" for "the mutual advantage of said broker and said [agent]." The contract was signed by Pool, not on behalf of the corporation, but by Charles A. Pool, broker.

Neb. Rev. Stat. § 45-103.02 (Reissue 1988) provides for prejudgment interest

from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the rendition of judgment if all of the following conditions are met:

(1) The offer is made in writing upon the defendant by certified mail, return receipt requested, to allow judgment to be taken in accordance with the terms and conditions stated in the offer;

(2) The offer is made not less than ten days prior to the commencement of the trial;

(3) A copy of the offer and proof of delivery to the defendant in the form of a receipt signed by the party or his or her attorney is filed with the clerk of the court in which the action is pending; and

(4) The offer is not accepted prior to trial or within thirty days of the date of the offer, whichever occurs first.

Section 45-103.02 applies to all causes of action accruing on or after January 1, 1987. There is nothing in the record to show plaintiff complied with § 45-103.02. Therefore, the award of prejudgment interest was erroneous.

That part of the judgment awarding the plaintiff

prejudgment interest and commissions for the sales of 1309 Offutt and 9505 Briarwood is reversed, that part of the judgment holding Pool to be jointly and severally liable for the commissions owed the plaintiff is affirmed, and the cause is remanded with directions to enter a judgment conforming to this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.