THE NEW LIGHT COMPANY, INC., DOING BUSINESS AS THE GREAT WALL RESTAURANT, APPELLANT, V. WELLS FARGO ALARM SERVICES, A DIVISION OF BAKER PROTECTIVE SERVICES, INC., AND GENERAL ELECTRIC COMPANY, JOINTLY AND SEVERALLY, APPELLEES.

516 N.W.2d 260

Filed May 10, 1994.   No. A-92-694.

Kile W. Johnson, of Barlow, Johnson, Flodman, Sutter, Guenzel & Eske, and Marvin J. Monroe and Jeffrey R. Learned, of Denenberg, Tuffley & Jamieson, P.C., for appellant.

Michael G. Connery and Diana J. Vogt, of Kutak Rock, for appellee Wells Fargo.

Sievers, Chief Judge, and Connolly and Irwin, Judges.

Connolly, Judge.

The New Light Company, Inc. (New Light), appeals the trial court's decision granting summary judgment in favor of Wells Fargo Alarm Services (Wells Fargo). Wells Fargo installed a fire protection system in a restaurant owned by New Light. New Light sued Wells Fargo and General Electric Company as jointly and severally liable defendants for damages sustained by the restaurant as a result of a fire. Wells Fargo moved for summary judgment on the grounds that an exculpatory clause in its contract with New Light released Wells Fargo from any liability for the damages sustained. (The action against General Electric is pending.) We affirm because the exculpatory clause of the contract releases Wells Fargo from any liability for damages to New Light's restaurant.

## FACTS

On July 1, 1983, Wells Fargo and New Light entered into a contract for a fire detection and protection system for The Great Wall Restaurant, owned by New Light. Pursuant to the contract, Wells Fargo would design, install, maintain, and monitor the system. On October 6, 1988, the parties renewed the contract.

On January 7, 1989, a fire broke out at The Great Wall. The system provided by Wells Fargo did not detect the fire and did not communicate a warning signal. The fire spread, and the restaurant suffered extensive damage before the fire was discovered and extinguished.

In its petition, New Light alleged, among other things, that the restaurant sustained approximately $623,000 in damages because of Wells Fargo's gross negligence or wanton and willful misconduct in installing the fire protection system. New Light

cited a defect in the wiring of the system and the failure of Wells Fargo to install detection equipment in the basement-level clothes dryer room where the fire started.

Wells Fargo moved for summary judgment based on an exculpatory clause set out in paragraph D of both the original contract and the renewal agreement of October 1988. In the October 1988 renewal agreement, paragraph D is set out in boldface type and capital letters. It reads in pertinent part as follows:

> D. It is understood and agreed by [New Light] that Wells Fargo Alarm is not an insurer; . . . if [New Light] desires insurance, [New Light's] insurance will be obtained from an insurance company in such amount as [New Light] shall deem necessary to protect its interests. [New Light] does not and will not seek indemnity from Wells Fargo Alarm against any damages or losses caused by hazards to [New Light's] property. Wells Fargo Alarm makes no warranty, expressed or implied, that the systems it installs or the services it furnishes will avert or prevent occurrences, or the consequences therefrom, which the systems and services are designed to detect. [New Light] agrees that Wells Fargo Alarm shall not be liable for any of [New Light's] losses or damages, irrespective of origin, to person or to property, whether directly or indirectly caused by performance or nonperformance of any obligation imposed by this agreement or by negligent acts or omissions of Wells Fargo Alarm, its agents or employees.

(Emphasis supplied.) (Emphasis omitted.) In its response to the motion for summary judgment, New Light argued, among other things, that enforcement of the exculpatory clause would constitute a violation of public policy.

The trial court did not articulate its reasons for granting Wells Fargo's motion for summary judgment. Based on Wells Fargo's motion and New Light's response, we conclude that the court determined as a matter of law that the exculpatory language in paragraph D of the contract released Wells Fargo from any liability.

## ASSIGNMENTS OF ERROR

We reach only one of New Light's assignments of error, as it is dispositive of this appeal. New Light argues that the trial court erred in granting the motion for summary judgment because a provision in a contract exculpating a party from liability for gross negligence or wanton and willful misconduct constitutes a violation of public policy.

## STANDARD OF REVIEW

Where there is no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom and the moving party is entitled to judgment as a matter of law, summary judgment should be granted. Neb. Rev. Stat. § 25-1332 (Reissue 1989); *Hillie v. Mutual of Omaha Ins. Co.*, 245 Neb. 219, 512 N.W.2d 358 (1994); *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993); *Mayer v. Howard*, 220 Neb. 328, 370 N.W.2d 93 (1985).

In appellate review of a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Hillie v. Mutual of Omaha Ins. Co., supra*; *VonSeggern v. Willman*, 244 Neb. 565, 508 N.W.2d 261 (1993).

## ANALYSIS

A party is bound to the terms it has agreed to in a contract. *Guaranteed Foods v. Rison*, 207 Neb. 400, 299 N.W.2d 507 (1980). If the contents of an agreement are unambiguous, the document is not subject to interpretation and construction, and the intention of the parties to the document must be determined from the contents of the document. *Albee v. Maverick Media, Inc.*, 239 Neb. 60, 474 N.W.2d 238 (1991). Parties are bound by the terms of the contract even though their intent may be different from that expressed in the agreement. *Rumbaugh v. Rumbaugh*, 229 Neb. 652, 428 N.W.2d 500 (1988). Construction of an unambiguous contract provision is solely a question of law. *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992); *Newman v. Hinky Dinky*, 229 Neb. 382, 427 N.W.2d 50 (1988). A contract which is written in clear and unambiguous language is not subject to construction and must

be enforced according to its terms. *Elson v. Pool*, 235 Neb. 469, 455 N.W.2d 783 (1990).

Wells Fargo argues that the exculpatory clause is unambiguous and not subject to interpretation; therefore, it must be enforced according to its terms. New Light concedes that a party can be contractually exculpated from liability for ordinary negligence, see *Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 443 N.W.2d 596 (1989), and that the exculpatory clause before us is not ambiguous. New Light argues that the exculpatory language in paragraph D cannot release Wells Fargo from liability for gross negligence or wanton and willful misconduct because such a release would be unconscionable. According to New Light, the conduct in this case so far exceeds ordinary negligence that, in the interest of public policy, the court should not permit such conduct to be exculpated by contractual agreement.

New Light argues that the issue of whether a party can contractually exculpate itself from liability for gross negligence or wanton and willful misconduct is an issue of first impression in Nebraska. We disagree.

This appeal is controlled by *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988), a case involving a commercial lease. In *Bedrosky*, the tenant sued the landlord for damages to the tenant's personal property as a result of a fire in the leased premises. The tenant alleged that the landlord (1) violated state fire regulations by failing to enclose the elevator shaft and install fire doors, (2) lied about the condition of the building's sprinkler system and failed to keep the system in working order, and (3) failed to secure the building against trespassers. The landlord denied the allegations and argued that the lease precluded recovery by the tenant for damage to personal property. The lease contained the following provision:

"10. All personal property in the leased premises shall be at the risk of the Lessee only and the Lessor shall not be or become liable for any damage to said personal property [caused by defects in the building or by acts of other tenants or employees] or by the act or neglect of any other person or caused in any other manner whatsoever."

*Id.* at 202-03, 430 N.W.2d at 538. Although the terms "gross

negligence" and "wanton and willful misconduct" were not used in *Bedrosky*, the tenant, in substance, alleged conduct rising to the level of gross negligence or wanton and willful misconduct. The tenant did not challenge the clarity of the exculpation provision in paragraph 10. Instead, the tenant argued that a construction of the lease according to its plain and unambiguous terms would result in exemption of the landlord from liability, which would be unconscionable.

After expressing its reluctance to void contractual clauses on public policy grounds alone unless the provision at issue is "quite clearly repugnant to the public conscience," *id*. at 207, 430 N.W.2d at 541, the court observed that

> [t]he Uniform Residential Landlord and Tenant Act, which applies only to residential leases, contains an express prohibition against exculpatory clauses or limitations on the landlord's liability. [Citation omitted.] However, no such statutory prohibition exists for commercial leases, presumably because while a residential tenant must be protected against unfair disparity in bargaining power, no such inequality of positions exists in the business setting. A [commercial lessee] has the opportunity to "shop around" and negotiate for the terms of the arrangement . . . .

*Id*. at 207-08, 430 N.W.2d at 541. The court went on to hold:

> There is no indication in the evidence which was before the court on motion for summary judgment that [the tenant] fell victim to a disparity in bargaining power. She voluntarily entered into the lease agreement and signed it, indicating that she agreed with its terms. The language of the lease plainly exculpated the [landlord] from liability for damage to [the tenant's] property, "by the act or neglect of any other person or caused in any other manner whatsoever." . . . [W]e do not find the language of the exculpatory clause to be a clear contravention of public policy.

*Id*. at 208-09, 430 N.W.2d at 541.

In the case at bar, we are presented with a contract for a fire protection system rather than a lease, but otherwise the facts are analogous to those in *Bedrosky*. In *Bedrosky*, the

landlord and tenant were parties to a commercial contract. They agreed to a provision that unconditionally released the landlord from liability for damages to the tenant's personal property, regardless of how the damages were caused. Because of the commercial relationship between the parties, the Nebraska Supreme Court rejected the tenant's argument that public policy considerations required the court to void the unconditional release. Instead, the court upheld the exculpatory provision in paragraph 10. In the instant case, New Light and Wells Fargo were parties to a commercial contract. There is no indication in the record that New Light was a victim of a disparity in bargaining power. New Light voluntarily agreed to a provision that unconditionally released Wells Fargo from liability for damages that might result from hazards to the restaurant, regardless of how the damages were caused. We apply the rationale of *Bedrosky* and hold that because of the commercial relationship between the parties, there is no justification on the grounds of public policy for a court to void the exculpatory language in paragraph D of the October 1988 renewal agreement. Therefore, we affirm the judgment of the trial court granting the motion for summary judgment and dismissing Wells Fargo from the cause of action.

AFFIRMED.