MARO D. LYHANE, APPELLANT, v. RUDOLPH DURTSCHI ET AL., APPELLEES.

13 N. W. 2d 130

FILED FEBRUARY 9, 1944. No. 31701.

*H. G. Wellensiek*, for appellant.

*Harold A. Prince* and *William P. Mullen, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

Plaintiff in this action prays that an accounting be taken, and the amount of loss sustained by plaintiff and defendants and each of them, on notes purchased from the Farmers State Bank of Wood River, Nebraska, be ascertained and determined; that the liabilities of the parties be fixed

for their shares of such losses as provided by contract, and that judgment be entered against the defendants and each of them for the amount of their liability in excess of the loss sustained, and each of them be required to account for all money collected on the notes assigned to them for the use and benefit of plaintiff and defendants.

It will be necessary, in determining this case, to detail the substance of the amended petition which alleges: In November, 1929, for the purpose of building up the reserve of the Farmers State Bank, plaintiff and defendants orally agreed to purchase certain notes of the bank without recourse, in such amounts as they, or either of them, may thereafter determine, and that, in the event of loss sustained by any of them, they would each contribute their proportionate shares of the total of such losses sustained, which agreement was reduced to writing. Pursuant to the agreement, plaintiff and defendants A. E. Hauke, Otha Oldfather and M. J. McDermott each purchased notes totaling $10,000, and defendant W. A. Francis $6,000, in all $46,000, which amounts were paid by said parties to the bank. Defendants Durtschi and Schooley purchased no notes. Since the commencement of the action Schooley has died, and the action was revived, so far as he was concerned, against the executrix of his estate. All of such notes were left with the bank for payment.

On April 10, 1930, at a meeting of the board of directors of the bank, attended by all except plaintiff, a state bank examiner requested the elimination from the assets of the bank of doubtful notes, totaling $29,580.28, and, in lieu thereof and without the knowledge or authority of the plaintiff, substituted notes of the plaintiff, totaling $4,610, of defendant A. E. Hauke totaling $4,600, of defendant Oldfather, $4,850, of defendant W. A. Francis, $4,400, all of which notes were purchased from the bank under the written agreement. On January 22, 1931, the bank paid the plaintiff $600; on August 5, 1931, $250, with interest, the amounts collected on plaintiff's notes, leaving a balance due him of $3,750, with interest. Thereafter the bank became

insolvent, a receiver was appointed, and plaintiff filed claim for such amount. At this point, in the case of *State v. Farmers State Bank,* 127 Neb. 139, 254 N. W. 728, the plaintiff in the instant case appeared as intervener. The decision was rendered in 1934. The intervener filed a claim for a trust fund; the same contract was involved; the amount stated was $4,610, with credits of $850, leaving a balance of $3,750. The district court and this court disallowed the claim.

To continue the allegations of the petition: The plaintiff makes claim for the same amounts and, in addition, the expenditure of $544.75 for presentation of his claim in the former action, thereby sustaining a total loss of $4,294.75. Defendant McDermott purchased a note secured by a real estate mortgage which was not paid but was foreclosed on January 23, 1937, and decree entered March 30, 1937, in the sum of $11,003.36. On March 10, 1938, the real estate was sold for $8,600 to satisfy the decree, and the sale was confirmed May 13, 1938. Defendant McDermott sustained a loss of $2,403.36. Plaintiff has been informed that defendants Hauke, Oldfather and Francis have sustained losses on such notes purchased from the bank, but said defendants have refused to inform the plaintiff of the amount of such losses.

In the eighth paragraph of the amended petition, plaintiff further alleges: At a meeting of the board of directors April 10, 1930, the eliminated notes were assigned to plaintiff and defendants Hauke, Oldfather and Francis, and left with the bank for collection, the proceeds to be distributed among them, with interest, proportionately to the notes taken from each of them, and placed in the bank in lieu thereof, and any amount collected in excess to be paid the bank (then the insolvency of the bank is pleaded). Defendants Hauke, Oldfather and Francis, without the knowledge and acquiescence of plaintiff, secured possession of said notes at a secret meeting held March 8, 1934, of which plaintiff had no notice, and wrongfully turned the notes over to Hauke for collection and distribution among them-

selves. On February 22, 1936, Hauke had collected a total of $1,185.79, and wrongfully distributed the same as follows: $503 to himself, $529.79 to Oldfather, and $153 to Francis, and he has since that time collected the sum of $603.98, which he has wrongfully distributed, and, in addition, received payments in 1941 in amounts unknown. Defendants refused to pay plaintiff his proportionate share or furnish him with a statement or accounting. Included in the notes of defendant Francis, totaling $4,400, which were put in the bank in lieu of the notes eliminated, was the note of Francis for $2,100, now barred by the statute of limitations, and the amount Francis contributed towards the elimination of the doubtful paper was $2,300, all of which was known to the defendants some time prior to April 10, 1930. Defendants since that date have been hostile and noninformative and wrongfully promised plaintiff that, as soon as McDermott could ascertain his loss, a complete settlement would be made, in accordance with the written contract, at a directors' meeting to be called. Defendants had no intention of making such settlement and wrongfully made such promise to induce the plaintiff to defer bringing suit until his cause of action was barred by the statute of limitations. Plaintiff relied on such promise and did defer bringing action until the McDermott loss could be determined. Defendants refused to meet with plaintiff and make settlement, in accordance with the written contract, and the first knowledge plaintiff had with reference to the transactions, above stated, was February 2, 1943, when the deposition of defendant Hauke was taken in this action. The time for determining the loss of the parties to the written agreement was not fixed therein, was left to further agreement of the parties, and prior to November 1, 1934, plaintiff made a demand on defendants for a statement of their loss and a determination of the liability of the parties to the written agreement, and payment of his loss. Each of the parties orally requested him to defer settlement under the written agreement until the foreclosure proceedings by McDermott had been completed, and he could ascer-

tain his loss and the loss of each of the parties, and the recovery on the $29,580.28 (notes assigned by the bank to defendants) could be ascertained and determined, and defendants so agreed and promised. Plaintiff again recites the McDermott matter, and pleads an estoppel precluding the defendants from claiming that this action is barred by the statute of limitations and that plaintiff has been guilty of laches in bringing this action; that plaintiff sustained a loss of $4,294.75, with interest at 7 per cent from August 5, 1931, no part of which has been paid; prays for an accounting in accordance with the facts pleaded, as heretofore noted, as to the nature of the action.

The contract, made a part of the petition and the basis of this action, after naming the parties thereto, reads as follows:

"That, Whereas, the above named parties are all directors and financially interested in the Farmers State Bank of Wood River, Nebraska, and

"Whereas, each of the above named parties are desirous of and have agreed to purchase certain notes from The Farmers State Bank of Wood River, Nebraska, without recourse, in such amounts as they or either of them may hereafter determine, and

"Whereas, all of the above named parties have agreed that if there should be any financial loss to either or any of the above named persons by reason of having purchased notes from said Bank, as aforesaid, and in consideration of the mutual promises of the parties hereto, and in consideration of the covenants and agreements hereinafter to be kept and performed by the parties hereto, the above named parties hereby mutually agree as follows:

"That each of the parties above named shall purchase from the Farmers State Bank of Wood River, Nebraska, notes, either secured or unsecured, without recourse, and pay therefor the face value thereof to such an amount as each may determine for himself and to carry said note or notes until such time as the said Bank may, at its discretion, desire to repurchase the same or to purchase renewal

notes if said notes should be renewed, and to exercise due diligence in collecting said note or notes and render all assistance possible to each of the other parties hereto in collecting the notes purchased by them or either of them, and further agree to carry said notes until maturity or for a period of ——— months from the date hereof, and

"It is further mutually agreed that in the event that either or any of the parties hereto should not be able to collect said note or notes so purchased, in full, then each of the other parties hereto will contribute equally to said loss, if any sustained, in the collection of said notes in equal shares, that is each of the parties hereto agree to stand one-seventh (1/7) of the total loss that may result to the parties hereto by reason of having purchased the notes above referred to.

"It is further agreed and understood that the signing of this contract does not in any way obligate or bind The Farmers State Bank of Wood River to repurchase any of said notes and the purpose of this agreement is that each of the parties signing the same will stand an undivided one-seventh of any and all loss which may be sustained by the parties hereto through the purchase of said notes. It is agreed that said loss shall be determined within a period of ——— months from the date hereof, unless otherwise mutually agreed upon by the parties hereto."

On the defendant Durtschi there was no service; he bought no notes; nor did defendant Schooley. In addition to the contract appears in the record exhibit B, signed by defendants Oldfather and Francis, which reads as follows:

"Wood River, Nebraska.
"March 8th, 1934.

"At a meeting of the Directors of the Farmers State Bank, Wood River, Nebraska, which has closed and gone into the hands of receivership, the directors were interested in a certain amount of eliminated notes which were the property of the directors who had advanced the money to such elimination. All directors were notified about such meeting to be held at the home of A. E. Hauke for to take

such action to the best interest of the directors who had advanced such money. Upon discussion of the same it was agreed by all present which represented 3/4 of directors interested by such advancement of money that A. E. Hauke be appointed Trustee of said notes and collection thereof and that each director receive his percentage of money advanced in the amount recovered until the reduction of the amount so advanced equaled the amount of $3,750 which being the amount that M. D. Lyhane still had advanced and it being the lowest amount as his amount had been reduced by payments which the other directors had not shared in. And when the amounts of all directors had been reduced to $3,750, M. D. Lyhane would be included if further recovery is made on the eliminated notes of said agreement. The matter of interest on unpaid balances has been dispensed with until principal has been recovered. The amount of principal advanced by interested directors at the time of this meeting was: Otha Oldfather, $4,850, A. E. Hauke, $4,600, W. A. Francis $4,400, all members above present at this meeting. And M. D. Lyhane Bal. $3,750 who was not present at this meeting but had been notified to be present. The purpose of this meeting was to work out a way for the best recovery in the most efficient manner of the money so advanced."

To the amended petition defendants demurred on several grounds, the principal ones being: The contract in question is a several contract of indemnity; the plaintiff does not have any action on the contract, for the reason that, on the face of the amended petition, a cause of action arose against each of the signers on April 10, 1930, and there are no facts to toll the statute of limitations; the petition shows on its face that the plaintiff has been guilty of laches and has no standing in a court of equity. The demurrer was sustained, plaintiff's action dismissed, and plaintiff appeals to this court, assigning as error that the judgment of the court is contrary to law.

Plaintiff contends that the action is based solely on the written contract. The pertinent paragraph in the contract

is that in which it is mutually agreed that if the parties should not be able to collect the notes so purchased in full, then each of the other parties would contribute equally to the loss, if any, sustained, in equal shares, each of the parties agreeing to stand one-seventh of the total loss occasioned by reason of having purchased the notes, referred to in the amended petition; plaintiff contending that, if the contract created a relationship under which the plaintiff is entitled to an accounting and distribution, then there is one cause of action stated in the amended petition; that the effect is that a joint adventure was created; the contract related to a single transaction, the purchase of the assets of the bank, to enable the bank to continue business; citing *Alexander v. Turner,* 139 Neb. 364, 297 N. W. 589, giving the definition of a joint adventure as follows:

"A joint adventure has been defined as an undertaking by two or more persons to carry out a single business enterprise for profit." The case of *Soulek v. City of Omaha,* 140 Neb. 151, 299 N. W. 368, is cited, wherein it was held:

"A joint adventure is in the nature of a partnership, but may exist where persons embark on an undertaking without entering on the prosecution of a business as partners strictly but engage in a common enterprise for their mutual benefit." Plaintiff cites other cases where the facts disclose a joint adventure and in conformity with the definitions heretofore set out, and particularly cites 30 Am. Jur. 708, sec. 57, as follows:

"It is well settled, however, that an equitable action for an accounting is a proper remedy for a party to a joint adventure to recover his share of the profits, including secret profits which have been retained by a coadventurer, or to fix the liability for losses, and this is generally held to be true even though there may also be a right to sue at law, especially where the rights of the parties are so complex that they can better be adjusted in equity, or where a single action will not suffice to terminate the entire controversy."

Therefore, plaintiff contends, he properly premised this action in equity for an accounting, and that the notes de-

scribed in paragraph 8 of the amended petition were substituted for some of the original notes purchased from the bank; they were a part of the same transaction.

We conclude from an analysis of the contract that it is a contract of indemnity. The parties in the instant action are not interested in one note, nor jointly interested in several notes. The contract provides for the purchase of notes severally and individually, and each party agreed to stand one-seventh of the loss. The terms of the contract provide: "each of the above named parties * * * have agreed to purchase certain notes * * * in such amounts as they or either of them may hereafter determine;" "each of the parties * * * shall purchase from the (bank) notes," "each of the other parties hereto will contribute" etc.; that is, each of the parties hereto agrees to stand one-seventh of the total loss.

A contract of indemnity is defined in 31 C. J. 419, sec. 1, the writer adding: "it may be more specifically defined as the obligation or duty resting on one person to make good any loss or damage another has incurred or may incur by acting at his request or for his benefit."

The distinction between the instant case and the cases cited by the plaintiff is that the contract in question provides for the purchase of the notes severally and individually, and then each of the parties agrees to stand one-seventh of the loss. No party was required by the contract to take all of the notes for the benefit of all, and when the notes were collected each party would have one-seventh of the profits and should pay one-seventh of the loss. This contract did not create a relationship analogous to partnership, but, as we view it, a several indemnity agreement.

Except for paragraph 8 of the amended petition, plaintiff sues on a written contract. He sets forth the loss, occasioned in April, 1930, by the conversion of certain notes; he gives credit for the payment he subsequently received, and he adds his claim, as stated in *State v. Farmers State Bank, supra.* He then pleads a separate transaction, eliminates defendants Schooley and Durtschi, and does not con-

nect defendant McDermott with the transaction pleaded in paragraph 8 of the amended petition. We need not concern ourselves with the proposition of misjoinder of causes of action, because it is conceded by the plaintiff that the basis of the action is on the contract and nothing more. This brings us to the question of the statute of limitations.

The plaintiff pleads that he was a party to the contract, agreed to pay one-seventh of the loss, and that on April 10, 1930, his notes were wrongfully converted. These notes totaled $4,610. The bank paid plaintiff $850; he acknowledges the credit. This left a balance due him of $3,750, with 7 per cent interest from August 5, 1931. He added the expense of his claim filed in the former action. It is apparent he suffered his loss on August 5, 1931, and his cause of action accrued against defendant Schooley at that time. Schooley purchased no notes, so a set-off in his favor is not involved. The present action was brought in 1941, 11 years after the alleged conversion, so the statute of limitations applies to defendant Schooley.

In the case of *Bankers Surety Co. v. Willow Springs Beverage Co.*, 104 Neb. 173, 176 N. W. 82, this court held: "It is the rule in the case of indemnity contracts that a cause of action to recover indemnity does not accrue until a loss occurs, and, it follows, the statute of limitations does not commence to run until that time."

We conclude that the plaintiff pleads his loss was, of August 5, 1931, determined in the amount of $4,294.75, and this would apply equally to defendants Hauke, Oldfather and Francis. The fact that these defendants obtained possession of the eliminated notes and attempted to collect the same, would not toll the statutes on an original contract. If there would be any merit to the plaintiff's claim it would be with reference to defendant McDermott, for the reason that the latter's loss was apparent in 1938, but the plaintiff could have sued McDermott, within the statute of limitations, from and after August 5, 1931. There would be no counterclaim in favor of McDermott under such circumstances.

By the provisions of section 20-812, Comp. St. 1929, the "defendant may set forth * * * as many grounds of * * * counterclaim, and set-off as he may have" etc. Section 20-813, Comp. St. 1929, provides:

"The counterclaim mentioned * * * (in section 20-812) must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action."

At the time of the plaintiff's loss, that is, August 5, 1931, there was no counterclaim existing in favor of McDermott that could have been pleaded, and plaintiff would not have been obliged to wait, under the contract, until McDermott's loss was known. As stated in 57 C. J. 394, sec. 45:

"A debt due at a future time cannot as a general rule be set off in equity against a debt presently due; and equity has no power to prevent a party from collecting at law a debt due him because he owes to defendant a debt not due and which defendant may not be able to collect when it is due, if this fund is not stayed in his hands. A set-off will, however, be allowed in equity on the application of complainant, where defendant is insolvent, even though the debt of complainant to defendant is not due, * * * but where plaintiff is insolvent defendant may set off in equity a demand, although not yet due or payable."

There is no question of insolvency here, respecting the loss to be taken under the contract. Since the plaintiff could have sued McDermott from and after August 5, 1931, the statute of limitations commenced to run at that time. The fact that McDermott later sustained his loss would not toll the statute. We are not concerned with McDermott's right to sue the plaintiff; McDermott had commenced no such action.

Calling attention to paragraphs 8 and 9 of the amended petition, and bearing in mind that the basis of this action is on contract, section 20-216, Comp. St. 1929, is applicable to any oral agreement stated in such paragraphs. It reads:

"In any cause founded on contract, when any part of the principal or interest shall have been voluntarily paid, or an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same shall have been made in writing an action may be brought in such case within the period prescribed for the same, * * * ."

Any transaction that plaintiff pleads does not change his interest in the eliminated notes in any particular. No attempt was made to deprive him of his interest. His rights were recognized. He received his share of the collection proportionately. He pleaded when he sustained the loss. He attempted to create a trust claim in a former litigation, setting forth the same subject matter. He waited 10 years at least from the time his loss occurred under the contract and again asserted it in litigation in 1934, and waited seven years longer. In any event, he did not comply with the provisions of section 20-205, Comp. St. 1929, providing: "Within five years, an action upon a * * * contract or promise in writing," etc.

Under the circumstances of this case, we conclude that the trial court properly sustained the demurrer.

AFFIRMED.