NOGG BROTHERS PAPER CO., A NEBRASKA CORPORATION, APPELLEE, V. WILLIAM J. BICKELS, APPELLANT.

446 N.W.2d 729

Filed October 13, 1989. No. 88-127.

Daniel W. Evans, of Steier & Kreikemeier, P.C., for appellant.

Eric H. Lindquist, of Abrahams, Kaslow & Cassman, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This action was brought in the county court for Douglas County by the plaintiff-appellee, Nogg Brothers Paper Co. (Nogg), on a personal guaranty executed by the defendant-appellant, William J. Bickels. The county court

found in favor of defendant Bickels. Nogg appealed to the district court for Douglas County, where the county court decision was reversed and judgment entered for Nogg. Bickels appealed to this court. We affirm.

The facts of the case were stipulated at trial and show the following. Defendant was president and part owner of Bill & Buck, Inc., doing business as Bic's Deli Mart (Bic's). Bic's applied to Nogg for a credit account. As part of the application and pursuant to the specific demand of Nogg, Bickels executed a document provided by Nogg entitled "Individual Personal Guaranty." The guaranty stated:

> I, <u>William Bickels</u> . . . for and in consideration of your extending credit at my request to <u>Bic's Deli Mart</u> (hereinafter referred to as the "Company"), of which I am <u>President</u>, hereby personally guarantee to you the payment at <u>NOGG BROTHERS PAPER COMPANY</u> in the State of <u>NEBRASKA</u> of any obligation of the Company and I hereby agree to bind myself to pay you on demand any sum which may become due to you by the Company whenever the Company shall fail to pay the same. It is understood that this guaranty shall be a continuing and irrevocable guaranty and indemnity for such indebtedness of the Company. I do hereby waive notice of default, non-payment and notice thereof and consent to any modification or renewal of the credit agreement hereby guaranteed.

Nogg did not send Bickels any documents purporting to accept the guaranty.

Nogg granted credit and delivered goods and services to Bic's in the amount of $4,424.05. Nogg demanded payment from Bic's and Bickels. Both refused to pay. Nogg did not pursue its remedies against Bic's, but initiated this action against Bickels.

The county court found that Bickels' guaranty was conditioned upon Nogg's exhaustion of its remedies against Bic's, thus finding that the guaranty was a guaranty of collection. Because Nogg had failed to exhaust its remedies against Bic's, the county court dismissed the cause without prejudice. Nogg appealed to the district court for Douglas County. Bickels cross-appealed, assigning error in the county

court's action dismissing the cause without prejudice. The district court reversed the decision of the county court and gave judgment in favor of Nogg in the amount of $4,424.05 plus costs.

Bickels appeals to this court and assigns, in substance, that the district court erred (1) in reversing the county court's determination that Bickels' guaranty was conditioned on Nogg's exhaustion of its remedies against Bic's, (2) in failing to require notice of acceptance to validate the guaranty, and (3) in not dismissing plaintiff's case with prejudice.

Both parties agree that the issue raised by the first assignment is whether the guaranty created a guaranty of payment or a guaranty of collection. Under a guaranty of payment the guarantor undertakes that if the obligation is not paid when due, the guarantor will pay it according to its terms without regard to whether the guaranteed person has exhausted all remedies against the primary debtor. See, *First Nat. Bank v. Benedict Consol. Indus.*, 224 Neb. 860, 402 N.W.2d 259 (1987); *Bain v. King*, 128 Neb. 682, 259 N.W. 751 (1935); *Bloom v. Warder*, 13 Neb. 476, 14 N.W. 395 (1882); Neb. U.C.C. § 3-416(1) (Reissue 1980) (defining guaranty of payment with reference to negotiable instruments). In contrast, under a guaranty of collection the guarantor undertakes the obligation to pay only after the guaranteed person has unsuccessfully exhausted all reasonable means of collection against the primary debtor. See, *McCague Bros. v. Irey*, 73 Neb. 602, 103 N.W. 281 (1905); § 3-416(2) (defining guaranty of collection with reference to negotiable instruments).

A guaranty is interpreted using the same general rules as are used for other contracts. *Aetna Life Ins. Co. v. Anderson*, 848 F.2d 104 (8th Cir. 1988). Cf. *First Trust Co. v. Airedale Ranch & Cattle Co.*, 136 Neb. 521, 286 N.W. 766 (1939). A written contract expressed in unambiguous language is not subject to rules of construction, and the intention of the parties must be determined from the contents of the contract. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988). The fact that there exist more than one arguable interpretation of a contract term does not necessarily indicate that it is ambiguous. *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988). A

contract is only ambiguous if, upon considering the contract as a whole, the contract leaves uncertain which of two or more meanings represents the true intentions of the parties. *Id.*

There is no ambiguity in the guaranty that Bickels signed. Bickels stated in the guaranty, "I . . . personally guarantee to you the payment" of Bic's obligations to Nogg "whenever [Bic's] shall fail to pay the same." Bickels contends that the phrase "shall fail to pay" in the guaranty is ambiguous because it is unclear whether the phrase refers to failure to pay upon demand or failure to pay after judgment and unsatisfied execution. The ordinary and plain meaning of the phrase "fail to pay" is failure to pay at maturity or demand and not upon judgment and unsatisfied execution, as argued by Bickels.

Where a guaranty uses unqualified language of payment, it has historically been interpreted to guarantee the payment of the underlying obligation upon maturity. The term "shall fail to pay," as used in the guaranty, is not an added condition to Bickels' guaranty of payment to Nogg and is not indicative of a guaranty of collection. In *Murphy v. Stuart Fertilizer Co.*, 221 Neb. 767, 770-71, 380 N.W.2d 631, 634 (1986), we held that a guaranty which stated, " 'We hereby guarantee the payments as set-forth in this Agreement . . .' " was a guaranty which "contained no conditions and as such obligated [the guarantors] to make payment if [the primary debtor] failed to do so." In *Murphy* the very definition of an unconditional guaranty was that the guarantors were obligated to pay upon the primary debtor's failure to pay. A guaranty is considered unconditional even though no liability arises until maturity. Use of the unqualified phrase "fail to pay" is merely a reference to that fact.

Moreover, our law with respect to negotiable instruments has long determined that the unqualified use of language of payment in a guaranty creates an obligation upon maturity. See *International Harvester Co. v. Schultz*, 102 Neb. 753, 169 N.W. 428 (1918) (holding the language " 'For value received, I hereby guarantee the payment of the within note . . .' " (syllabus of the court) did not require the guaranteed person to undertake the collection of the notes from the makers thereof). Article 3 of the Nebraska Uniform Commercial Code has

codified this common-law rule. Although not controlling in this action because we are not here concerned with a negotiable instrument, § 3-416(1) and (3) mandate that a guaranty which uses the language "payment guaranteed" or its equivalent, or does not otherwise specify its nature, will be considered a guaranty of payment. As set out in the comment to § 3-416, the definitions contained in that section reflect "the commercial understanding as to the meaning and effect of words of guaranty . . . ." The law with respect to instruments indicates that commercial usage, as well as common usage, views language of "payment" in a guaranty as creating liability upon maturity and not upon judgment and unsatisfied execution.

The following example clarifies the difficulty with Bickels' proposed interpretation of the term "fail to pay." In *Mayo v. Bloomberg*, 290 Mass. 168, 195 N.E. 99 (1935), the defendant guaranteed payment to the plaintiffs if the primary debtor failed to pay the obligation within 10 days of maturity. If one would follow Bickels' proposed interpretation of the phrase "fail to pay," the guaranty in the *Mayo* case would mean that the defendant was only obligated to pay the plaintiffs if the plaintiffs were able to obtain a judgment against the primary debtor and have execution returned unsatisfied within 10 days of maturity. The primary debtor would have "failed to pay" only if the plaintiffs were unable to obtain judgment and have execution returned unsatisfied within 10 days of maturity. Bickels' interpretation would reduce the *Mayo* guaranty to a nullity, contrary to the objective intent of the parties. The court in *Mayo* held that the guaranty was an unconditional guaranty of payment.

Next, Bickels contends that by including the word "indemnity" in the guaranty Nogg limited the guaranty to one of collection. Even though a cause of action for a contract of indemnity does not accrue until a loss occurs, *Lyhane v. Durtschi*, 144 Neb. 256, 13 N.W.2d 130 (1944), the mere inclusion of the word "indemnity" in a contract does not by itself control the conditions of liability or create ambiguity. We held in *Steinheider & Sons, Inc. v. Iowa Kemper Ins. Co.*, 204 Neb. 156, 161, 281 N.W.2d 539, 542 (1979), that "in construing a contract, the instrument must be read as a whole, giving force

and effect to all its provisions to determine whether or not any ambiguity exists . . . ." The guaranty in this case, viewed as a whole, uses language of "payment," as discussed above. The indemnity language is merely cumulative language within the guaranty and can be given effect without limiting the guaranty or making it ambiguous.

The language of the guaranty, taken as a whole, indicates an objective intention of the parties to execute a guaranty of payment. Upon considering the guaranty with a view to its plain and ordinary language, there do not remain two or more meanings which could represent the true intent of the parties.

In arguing that the guaranty must be construed as a guaranty of collection, Bickels relies on the rule of construction stated in *Metropolitan Utilities Dist. v. Fidelity & Deposit Co.*, 200 Neb. 635, 640, 264 N.W.2d 854, 857 (1978), that "[i]f an obligee in a guaranty draws it in a form requiring explanation, the guarantor is a favorite of the law in the interpretation of the ambiguous provision." A contract written in unambiguous language is not open to construction against the drafter or otherwise. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988); *Cillessen Constr. v. Scotts Bluff Co. Hous. Auth.*, 217 Neb. 39, 348 N.W.2d 418 (1984). There is no ambiguity in the guaranty, and therefore, there is no reason to consider the rules of construction relied upon by the defendant.

Because we hold that the guaranty executed by Bickels was an unconditional guaranty of payment, we need not consider the second and third assignments of error. Bickels concedes under the second assignment that under Nebraska law no notice of acceptance is required for a guaranty of payment. See, *Standard Oil Co. v. Hoese*, 57 Neb. 665, 78 N.W. 292 (1899); *Lininger v. Wheat*, 49 Neb. 567, 68 N.W. 941 (1896); *Wilcox v. Draper*, 12 Neb. 138, 10 N.W. 579 (1881). The third assignment, that the trial court erred in not dismissing the cause with prejudice, is not in issue because we affirm the district court's determination that the cause should not have been dismissed at all.

The judgment of the district court is affirmed.

AFFIRMED.