**In the Matter of Anthony J. HASKE, Debtor.**

**Nos. CV. 90–0–4, BK. 88–2008.**

United States District Court, D. Nebraska.

Nov. 2, 1990.

MEMORANDUM AND ORDER

STROM, Chief Judge.

This matter is before the Court on appellant's notice of appeal from the Bankruptcy Court (Filing No. 1). Norwest Bank Ne-braska, N.A., ("Norwest") appeals pursuant to Bankruptcy Rule 8001, *et seq.*, from the November 21, 1989, order of the Bankruptcy Court (Bankruptcy Filing No. 69) limiting attorney fees recoverable under a deed of trust and ordering Norwest to return property secured by the deed of trust to the debtor-appellee, Anthony J. Haske. The order of the Bankruptcy Court is reversed and the case remanded.

On July 5, 1985, Anthony J. Haske and his wife, Nancy J. Haske, delivered a deed of trust for residential property to secure a loan from Norwest for $26,595.50. The Haskes defaulted, and Norwest filed a notice of sale on October 16, 1987. In order to prevent the sale, the Haskes filed for Chapter 13 relief on November 25, 1987. On February 5, 1988, Norwest filed a notice of objection to confirmation of the Haskes' Chapter 13 plan. A hearing was scheduled for November 4, 1988; but, two weeks before the hearing, the Haskes filed a motion to dismiss their bankruptcy, which was granted. Norwest then filed another notice of sale. Appellant Haske, this time without his wife, filed another Chapter 13 petition on December 19, 1988, to prevent the sale.

On March 3, 1989, the Bankruptcy Court granted Haske's motion to incur debt from another party in order to pay off the obligation owed to Norwest. Norwest, however, contended that Haske was liable not only for $26,016.73 in principal and interest but also for $5,825 in attorney fees it had incurred relative to the deed of trust and the ensuing bankruptcy filings. The parties requested a determination as to Norwest's entitlement to attorney fees. The bankruptcy code defers to the parties's agreement for determining whether attorney fees are recoverable for over-secured claims. *See* 11 U.S.C. § 506(b) (1988). *See also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Paragraph eighteen of the deed of trust agreement provides:

Trustor expressly covenants and agrees to pay and discharge all costs, fees and expenses of this Trust, including, in the event of sale by the Trustee of the Trust

Property, the Trustee's costs, expenses and fees, which fees shall not exceed $500.00 plus ½ of 1% of the amount secured hereby and remaining unpaid.

The Bankruptcy Court construed paragraph eighteen to limit Norwest to attorney fees of $500 plus one-half of one percent of the amount secured and remaining unpaid.[1] Norwest was directed to release the deed of trust upon payment by Haske of the amounts owing.

On this appeal, Norwest raises two issues. First, Norwest contends that the Bankruptcy Court erred in interpreting paragraph eighteen to limit its attorney fees. Second, Norwest contends the Bankruptcy Court erred in directing the release of the deed of trust to Haske.

## DISCUSSION

The Bankruptcy Court's award of attorney fees and the reconveyance of the deed of trust conclusively adjudicated the dispute between the two parties. It is therefore an appealable final order under 28 U.S.C. § 158(a) (1988). *Cf. In re Prines*, 867 F.2d 478, 481 (8th Cir.1989) (district court award of trustee's fees and remand for ministerial calculation is final appealable order).

The parties raise no issues of disputed fact in this appeal. The Bankruptcy Court's interpretation of the fees provision of the deed of trust was a finding of law and thus is reviewable *de novo* by this Court. *See Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987).

---

**1.** The Bankruptcy Court also awarded $283 in expenses, $200 for an appraisal, and $25 for a title certificate as stipulated by the parties. The parties also requested an adjudication of the amount owing on the promissory note. The Bankruptcy Court did not resolve this dispute, and the parties have not raised it on appeal.

**2.** In opposition to this basic tenet of contract interpretation, Norwest ventures the unsupported—and unsupportable—statement that "A contract can only be considered ambiguous if one of the parties argues that it is ambiguous." Norwest goes on to argue that the Bankruptcy Court was therefore "improper" in choosing to adopt an interpretation of the contract not suggested by either of the parties. This argument,

Paragraph eighteen breaks down into three parts. The first part provides that Haske shall pay "all" costs, fees, and expenses "of this Trust." The term "fees" no doubt includes attorney fees. *See State v. Russell*, 51 Neb. 774, 778, 71 N.W. 785, 787 (1897). The second part makes explicit that any costs, fees, and expenses incurred in the event of sale by the trustee of the trust property are to be considered as indemnifiable costs, fees, and expenses "of this Trust." The third part of paragraph eighteen provides a strict fee limit. The question before the Court is whether the term "which fees" in the third part refers to the "all" fees of part one or only to the fees incurred "in the event of sale" in part two.

Before answering this question, a few fundamentals of contract interpretation are in order. The Court, of course, ordinarily looks to state law for guidance in the interpretation of contracts. The threshold determination is whether the contract is ambiguous. A contract is ambiguous only if it is reasonably susceptible to more than one interpretation. *See Knox v. Cook*, 233 Neb. 387, 391, 446 N.W.2d 1, 4 (1989). Whether a contract is ambiguous is determined objectively by reference to the words of the contract, not by the subjective contentions of the parties.[2] *See Bedrosky v. Hiner*, 230 Neb. 200, 204, 430 N.W.2d 535, 539 (1988). If the contract is ambiguous, then its meaning is ordinarily construed against the drafter, in this case Norwest Bank. *See Gard v. Pelican Pub. Co.*, 230 Neb. 656, 661, 433 N.W.2d 175, 179 (1988). But there is a strong presumption

by the same token, would bar this Court from setting forth its own independent construction of paragraph eighteen, as in fact it does today. Norwest's narrow and novel notion of judicial review of contract interpretation has not found general acceptance for, notwithstanding the ill-advised contentions of the parties, "[i]t is, emphatically, the province and duty of the judicial department, to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803) (Marshall, C.J.). "[A]ppellate courts have untrammelled power to interpret written documents." *Eddy v. Prudence Bonds Corp.*, 165 F.2d 157, 163 (2d Cir.1947) (L. Hand, J.) (footnote omitted), *cert. denied*, 333 U.S. 845, 68 S.Ct. 664, 92 L.Ed. 1128 (1948).

that the written instrument correctly expresses the intention of the parties to it. *See Artex, Inc. v. Omaha Edible Oils, Inc.,* 231 Neb. 281, 286, 436 N.W.2d 146, 150 (1989). If a contract is not ambiguous, the intention of the parties is determined from how the parties employ words and language in the contract document, without reference to external rules of construction. *See Washington Heights Co. v. Frazier,* 226 Neb. 127, 133–34, 409 N.W.2d 612, 616 (1987) (per curiam); *see also McCarthy Bros. Constr. Co. v. Pierce,* 832 F.2d 463, 467 (8th Cir.1988). In other words, where the contract language is plain and unambiguous, a court will not construe the language against the drafter. *See Nogg Bros. Paper Co. v. Bickels,* 233 Neb. 561, 566, 446 N.W.2d 729, 732 (1989).

Norwest argues that the contract language is not ambiguous because if the fee limitation clause is taken to qualify the first part of paragraph eighteen, the second part is thereby rendered meaningless surplusage. Haske's one-and-a-half page brief does not respond to this argument. It is, in any event, without merit. Even if the fee limitation language were taken to qualify the first part of the paragraph, the second part would still retain independent meaning because, regardless of the subsequent fee limitation language, part two makes clear that any costs, fees, and expenses incurred by the Trustee in selling the secured property are to be considered in the class of costs, fees, and expenses "of this Trust" for which Haske is liable.

■ Nevertheless, paragraph eighteen is not ambiguous. Simple grammatical construction makes clear that the words "which fees" in part three can only refer to fees "in the event of sale" in part two of paragraph eighteen. No other construction makes sense. First, in part one of paragraph eighteen, the phrasing refers to "costs, fees, and expenses." But, in part two, the ordering is changed to "costs, expenses, and fees," followed by a comma and the term "which fees." The placement of "fees" at the end of the series reflects an objective intent to qualify it with the words—"which fees"—immediately following.

Second, part one of paragraph eighteen makes Haske liable for "all" fees. It would be anomalous and contrary to a plain and ordinary reading of the agreement to find that what one clause gives another takes away, *i.e.,* to read the strict fee limitation language of part three to act in complete derogation of the promise of indemnification for "all" fees in part one.

If the contract were ambiguous and it were necessary to apply rules of construction, this Court's reading would draw further support from two other principles of construction. First, the "last antecedent clause" principle of contract construction provides that a qualifying phrase is generally confined to the last antecedent. *See Illinois Bell Tel. v. Reuben H. Donnelley Corp.,* 595 F.Supp. 1192, 1200 (N.D.Ill. 1984); *cf. State v. Jennings,* 195 Neb. 434, 439–40, 238 N.W.2d 477, 481 (1976) (applying principle to construction of statute). Second, a contract must be viewed as a whole, and effect given, where possible, to every part. *See Crowley v. McCoy,* 234 Neb. 88, 91, 449 N.W.2d 221, 224 (1989). To interpret the fee limitation language to extend to all fees incurred by Norwest in protecting its rights upon Haske's default would be at odds with paragraph sixteen of the deed of trust, which provides in part:

> [N]o provision of this Deed of Trust shall require Trustee to expend or risk its own funds, or otherwise incur any financial obligation in the performance of any of its duties hereunder, *or in the exercise of any of its rights or powers,* if it shall have grounds for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it. . . . (emphasis added).

■ One final matter remains. Norwest contends it is entitled to fees for the cost of prosecuting this appeal. Because Norwest's prosecution of this appeal related not to protecting its interest in the trust property, but only to securing attorney fees, allowance of fees for this appeal would not be "reasonable" under 11 U.S.C.

§ 506(b). *See In re Brunel,* 54 B.R. 462, 464 (Bankr.D.Col.1985). Accordingly,

IT IS ORDERED that the Bankruptcy Court's order of November 21, 1989, and the matter remanded for further proceedings in accordance with this memorandum opinion and order.