KEENAN PACKAGING SUPPLY, INC., A SOUTH DAKOTA CORPORATION, APPELLANT AND CROSS-APPELLEE, V. ADA B. MCDERMOTT, TRUSTEE, APPELLEE AND CROSS-APPELLANT.

ADA B. MCDERMOTT, TRUSTEE, APPELLEE AND CROSS-APPELLANT, V. KATHY KEENAN, DOING BUSINESS AS KEENAN PACKAGING SUPPLY, APPELLANT AND CROSS-APPELLEE.

700 N.W.2d 645

Filed July 26, 2005.    Nos. A-03-712, A-03-721.

James B. McVay, of Tiedeman, Lynch, Kampfe & McVay, for appellants.

Kirk E. Goettsch and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellee.

IRWIN, CARLSON, and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Ada B. McDermott, Trustee, as lessor, and Kathy Keenan, doing business as Keenan Packaging Supply, as lessee, entered into a lease for certain commercial property in Omaha, Nebraska. At the time the parties signed the lease, Keenan operated her business as a sole proprietorship. Keenan subsequently incorporated her business as Keenan Packaging Supply, Inc., and assigned to the corporation all causes of action arising in favor of Keenan in connection with the lease. For the sake of simplicity, we shall refer herein to both incarnations of Keenan's business as "Keenan Packaging." Ada, as trustee, filed a petition in the district court for Douglas County alleging that Keenan Packaging was liable for unpaid rent owed pursuant to the lease. Keenan Packaging filed a petition in the district court against Ada, as trustee. Keenan Packaging alleged, in part, that Ada breached the lease by failing to maintain the roof of the leased property, which failure resulted in the loss or destruction of considerable personal property of Keenan Packaging from water damage. The district court consolidated the two cases for trial, and after the trial, the court entered an order dismissing both petitions. Both parties appealed from the decision of the district court. The appeals were

consolidated, and Keenan Packaging was designated as the appellant and cross-appellee and Ada was designated as the appellee and cross-appellant for purposes of briefing and argument. For the reasons set forth herein, we affirm in part, and in part reverse and remand with directions.

## BACKGROUND

In approximately 1977, Ada and her husband, Joe McDermott, acquired certain commercial property in Omaha. Ada and Joe subsequently conveyed this property to the Ada McDermott Revocable Trust (the trust). Ada is trustee of the trust, and she performs bookkeeping and tax-related work for the trust's commercial rental properties. Joe, as the manager of the commercial buildings owned by the trust, performs maintenance, interacts with tenants, and supervises employees working at the property. The building at issue here (the McDermott property) consists of 80,000 square feet and is divided into sections or bays and leased to different parties. The McDermott property has one continuous roof over the entire 80,000 square feet.

Keenan Packaging is in the business of distributing packaging, janitorial, and laminating equipment and supplies. In May 1998, Keenan began looking for a new space to lease for her business. At that time, Keenan and a representative of a commercial management company inspected the McDermott property. The particular area available for lease was 12,500 square feet located in the far west end of the building. An office area comprising about 10 to 15 percent of the total rental space was located at the front of the bay, while warehouse facilities were located to the back of the bay. Upon first inspecting the McDermott property, Keenan observed that the carpeting was wet, that the offices had waterstains, and that the warehouse had pools of water on the floor. Keenan discussed those problems with Joe and the commercial management company representative, who both assured Keenan that the McDermotts would take care of the problem with the roof.

Ada, as trustee, and Keenan Packaging subsequently entered into a lease agreement for the rental space, such lease commencing June 15, 1998, and ending June 30, 2001, with a monthly rental amount of $3,490. Keenan Packaging paid a security

deposit equal to 1 month's rent and paid half a month's rent for June 1998. The relevant lease provisions are as follows:

6. REPAIR AND MAINTENANCE: The Lessee shall, at his sole expense, keep the interior of the premises, including all windows, doors and glass, in good order and repair, reasonable wear and tear and damage by fire excepted. The Lessor shall keep the structural supports, exterior walls and roof of the building in good order and repair and shall be responsible for the operation and maintenance of all common areas and facilities as hereinafter provided. . . .

. . . .

10. CONDITION OF PREMISES: The Lessee has examined the premises and is satisfied with the physical condition thereof, including all equipment and appurtenances, and his taking possession thereof shall be conclusive evidence of his receipt thereof in good and satisfactory order and repair, unless otherwise specified herein. . . .

. . . .

14. PERSONAL PROPERTY AT RISK OF LESSEE: All personal property in the premises shall be at the risk of the Lessee only. The Lessor shall not be or become liable for any damage to such personal property, to the premises or to Lessee or any other persons or property as a result of water leakage, sewerage, electric failure, gas or odors or for any damage whatsoever done or occasioned by or from any plumbing, gas, water or other pipes or any fixtures, equipment, wiring or appurtenances whatsoever, or for any damage caused by water, snow or ice being or coming upon the premises, or for any damage arising from any act or neglect of other tenants, occupants or employees of the building in which the premises are situated or arising by reason of the use of, or any defect in, said building or any of the fixtures, equipment, wiring or appurtenances therein, or by the act or neglect of any other person or caused in any other manner whatsoever.

. . . .

30. NO OTHER AGREEMENTS: This lease contains the entire understanding and agreement of the parties,

supersedes all prior understandings and agreements and cannot be changed orally.

"Addendum A," attached to the lease and signed by the parties, provided in part that the lessor, at the lessor's expense, would "[r]epair ceiling in hall area and repair roof where needed."

Shortly after moving into the premises, Keenan Packaging experienced water problems that continued throughout its tenancy. Keenan Packaging paid rent pursuant to the lease through February 1999. In March, Keenan informed the McDermotts that Keenan Packaging could sustain no more damages and would pay no more rent until the McDermotts had the roof repaired. On or about July 7, the McDermotts caused a notice to quit to be served on Keenan Packaging. The parties subsequently entered into an agreement whereby Ada would not hold Keenan Packaging responsible for the remaining term of the lease if Keenan Packaging vacated the premises, which Keenan Packaging did on August 21.

Ada, as trustee, filed suit against Keenan Packaging on November 3, 1999. Ada alleged that Keenan Packaging failed and refused to abide by the terms of the lease before it vacated the premises on August 21, in particular by failing to pay rent to Ada as it came due. Ada alleged that based on the lease agreement, Keenan Packaging was indebted to Ada for $3,490 per month for the months of March through July 1999 and for a prorated amount of $2,364.19 for August 1 through 21, 1999, for a total amount due of $19,814.19.

Keenan Packaging filed an answer on November 19, 1999. Keenan Packaging denied Ada's allegations that it had failed and refused to abide by the terms of the lease and to pay rent when it came due. Keenan Packaging alleged that the leased premises were untenantable due to the failure of the roof to such an extent that every time it rained, the roof would leak, damaging or destroying furniture, equipment, and product. Keenan Packaging further alleged that such untenantability excused it from its obligation to pay rent. Keenan Packaging denied that it was indebted to Ada for $19,814.19 and sought dismissal of Ada's petition.

Keenan Packaging filed suit against Ada, as trustee, on May 11, 2000. Keenan Packaging alleged that Ada had materially

breached the terms of the lease by failing to keep the structural supports, exterior walls, and roof of the building in good order and repair and in failing to repair as needed the roof at the McDermott property. Keenan Packaging alleged that it vacated the McDermott property on or about August 21, 1999, due to Ada's material breaches of the lease. Keenan Packaging alleged that it incurred damages as follows: (1) $17,671.36 in damage to inventory, (2) $7,973 in damage to equipment, (3) $14,216.42 in additional rental expenses and other expenses incurred to obtain substitute space, (4) $2,113.98 in moving expenses, (5) $8,304.58 in additional wages paid by Keenan Packaging, (6) $2,979.58 in other miscellaneous expenses, and (7) $3,490 in the loss of the security deposit paid to Ada. Keenan Packaging alleged that the costs and expenses set forth were the kind that would ordinarily follow from Ada's failure to perform as required under the lease and that Ada knew or should have known that the costs and expenses incurred by Keenan Packaging were the likely result from Ada's breach of the lease. On this first cause of action, Keenan Packaging sought judgment against Ada in the amount of $56,748.92. Keenan Packaging also set forth causes of action for fraudulent misrepresentation and fraudulent concealment.

On July 11, 2000, Ada, as trustee, filed an answer to Keenan Packaging's petition. Ada admitted that Keenan Packaging vacated the McDermott property on or about August 21, 1999, but generally denied the remaining allegations of Keenan Packaging's petition.

On August 31, 2000, the district court entered an order granting Keenan Packaging's motion to consolidate the two cases for trial, which trial was held before the court on January 15 and 16, 2003. Keenan testified that when Keenan Packaging moved into the McDermott property, most of the items listed in the addendum to the lease had been completed, but that she did not know if any repair had been made to the roof as required by the addendum. The record at trial shows generally that Keenan Packaging experienced water problems within 2 or 3 days after moving into the premises. These water problems continued throughout the 14 months that Keenan Packaging occupied space in the McDermott property, despite various attempts by the McDermotts' employees to repair the roof. Throughout Keenan Packaging's tenancy,

Keenan or her employees consistently contacted the McDermotts whenever there was a water problem. In order to avoid or limit damage to product, Keenan and her employees would place trash cans throughout the leased area, move product from wet areas, and place tarps over product. The McDermotts provided Keenan Packaging with burlap sacks to help mop up the water, built a trough over the office area to catch water and direct it into trash cans, and provided trash cans and barrels in other portions of the premises to catch water.

In March 1999, there was a meeting attended by Keenan, the McDermotts, two of Keenan Packaging's employees, and a representative of the real estate management company for the McDermott property. At this meeting, Keenan told Joe that Keenan Packaging could not sustain further damages and that it would not pay rent until the McDermotts repaired the roof. Keenan testified that Joe promised during the meeting to replace the roof on the McDermott property. Keenan testified further that based on Joe's representation during the March meeting, Keenan Packaging elected to remain in the McDermott property. Subsequent to the March meeting, Keenan Packaging sent several letters to Ada outlining Keenan's understanding of Joe's representations during the meeting. Keenan Packaging never received a response to any of these letters and vacated the McDermott property in mid-August. Ada testified that under the lease, Keenan Packaging still owed $19,814.19—a rental amount of $3,490 per month for March through July 1999, plus a prorated rental amount of $2,364.19 for 21 days in August. Ada further testified that after Keenan Packaging vacated the McDermott property, the trust retained the security deposit paid by Keenan Packaging, and that when the security deposit was applied against the rent due, the balance owed by Keenan Packaging was $16,324.19. At trial, Keenan Packaging offered evidence concerning the damages allegedly sustained by it due to the leaky roof. We do not set forth the details of that evidence herein because the issue of Keenan Packaging's damages is not dispositive of our resolution of the parties' appeals.

On May 27, 2003, the district court entered an order ruling on the parties' claims. In its order, the court set forth certain factual findings and relevant portions of the lease agreement. The

court noted a serious question on proof of damages to the personal property of Keenan Packaging and observed that damages could not be based on speculation and conjecture. The court found there was no question that Keenan Packaging suffered some water damage to its personal property but found that paragraph 14 of the lease was very clear as to responsibility for personal property loss. The court found that the addendum clause, whereby Ada agreed to "repair roof where needed," did not supersede, modify, or eliminate the clear language of paragraph 14 of the lease. The court found that Ada was not guilty of gross negligence or willful and wanton misconduct with regard to roof repairs and that the McDermotts in fact attempted several times to repair the roof problems. The court concluded that Keenan Packaging must bear the loss of its personal property and any resulting damages and that Ada had no liability for Keenan Packaging's claims.

As to Ada's claim for rent from March 1 through August 21, 1999, the district court found that Keenan Packaging had a legitimate reason "for withholding rent and vacating the premises because of water damage to [its] products and equipment." The court further observed that just because Ada was not liable for the water damage, that did not mean Keenan Packaging had to stay in the McDermott property until the end of the lease term at the risk of sustaining further damage to its personal property. The court concluded that Keenan Packaging was not liable for the alleged unpaid rent.

The district court dismissed both parties' petitions and found that any request by any party for relief not specifically granted by the order of May 27, 2003, was denied. The parties subsequently perfected their respective appeals to this court.

## ASSIGNMENTS OF ERROR

Keenan Packaging asserts that the district court erred in (1) finding that the language of the lease and the addendum was not ambiguous and in failing to consider the parties' intent in determining whether Ada was liable for damages sustained by Keenan Packaging; (2) finding that the language of paragraph 14 of the lease was not superseded, modified, or eliminated by the provisions of the lease that required Ada to keep the roof of the

building in good order and repair and those provisions of the addendum that required Ada to repair the roof where needed; (3) finding that Ada was not guilty of gross negligence and wanton misconduct in her failure to keep the roof of the building in good order and repair and to repair the roof where needed; and (4) failing to award Keenan Packaging damages sustained because of the leaky roof on the McDermott property.

Ada, as trustee, asserts on cross-appeal that the district court erred in finding that Keenan Packaging had a legitimate reason for withholding rent.

## STANDARD OF REVIEW

A suit for damages arising from breach of a contract presents an action at law. *Par 3, Inc. v. Livingston*, 268 Neb. 636, 686 N.W.2d 369 (2004). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Id.* The interpretation of a contract involves a question of law, for which an appellate court has an obligation to reach its conclusions independent of the determinations made by the court below. *Midwest Neurosurgery v. State Farm Ins. Cos.*, 268 Neb. 642, 686 N.W.2d 572 (2004).

## ANALYSIS

*Interpretation of Lease.*

Keenan Packaging asserts that certain provisions in the lease and the addendum thereto are in conflict, are therefore ambiguous, and should be read to modify or eliminate paragraph 14 of the lease. Paragraph 14 contains the exculpatory clause relieving Ada of liability for damage to the personal property of Keenan Packaging caused by, inter alia, water leakage. Keenan Packaging relies on paragraph 6 of the lease, requiring Ada to keep the roof of the building in good order and repair, and on the addendum provision, requiring Ada to repair the ceiling in the hall area and to repair the roof where needed. Keenan Packaging argues that these provisions in the lease and the addendum are conflicting and are subject to different interpretations. Keenan Packaging essentially argues that the application of the exculpatory clause in paragraph 14 negates any remedy for a breach by Ada of paragraph 6 or the addendum. We disagree.

A lease agreement is to be construed as any other contract. *Johnson Lakes Dev. v. Central Neb. Pub. Power*, 254 Neb. 418, 576 N.W.2d 806 (1998). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Jensen v. Board of Regents*, 268 Neb. 512, 684 N.W.2d 537 (2004). A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Fraternal Order of Police v. County of Douglas*, 259 Neb. 822, 612 N.W.2d 483 (2000). When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Midwest Neurosurgery v. State Farm Ins. Cos., supra.* A contract must be construed as a whole, and if possible, effect must be given to every part thereof. *Big River Constr. Co. v. L & H Properties*, 268 Neb. 207, 681 N.W.2d 751 (2004). A party may not pick and choose among the clauses of a contract, accepting only those that advantage it. *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004).

The Nebraska Supreme Court in *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988), considered an exculpatory provision similar to that found in the lease in the present case. In *Bedrosky*, the plaintiffs suffered personal property losses from a fire which damaged the commercial structure they had leased. The plaintiffs claimed that the defendant landlord had failed to comply with certain regulations of the State Fire Marshal's office, failed to take other preventive measures, and, contrary to the defendant's representation, failed to keep the sprinkler system in proper working order. The plaintiffs asserted that the defendant should be responsible for the plaintiffs' losses, despite the exculpatory provisions in the parties' lease.

The Nebraska Supreme Court in *Bedrosky* found that when read in its "plainest, clearest sense," the lease placed no liability on the defendant for the damage to the plaintiffs' property. 230 Neb. at 206, 430 N.W.2d at 540. The court observed

that a written contract which is expressed in clear and unambiguous language is not subject to interpretation or construction. *Id.* The plaintiffs did not specifically argue that the lease was ambiguous; rather, they urged a nonliteral interpretation, based on public policy. More specifically, the plaintiffs argued that to construe the lease according to its plain language—in other words, to exempt the defendant from liability—would create an unconscionable result. The court reviewed the varying responses of other state courts considering the issue of exculpatory clauses in commercial leases. The court then found no indication in the evidence that the plaintiff who originally leased the property was a victim of disparity in bargaining power. The plaintiff voluntarily entered the lease and agreed to its terms. The language of the lease plainly exculpated the defendant from liability for damage to the plaintiffs' property. The Nebraska Supreme Court found that the plain language of the exculpatory clause did not permit the court to read into its meaning a limiting provision as urged by the plaintiffs. The court further found that the language of the exculpatory clause was not in contravention of public policy.

In the present case, as noted by the district court, paragraph 14 of the lease is very clear as to responsibility for personal property loss. The record shows that Keenan had leased commercial property prior to entering the lease at issue here. We see nothing in the record to suggest a disparity in the bargaining power between the parties. Keenan, as a representative of Keenan Packaging, signed a lease containing the exculpatory clause found in paragraph 14, the requirement in paragraph 6 that Ada keep the roof of the building in good order and repair, and the addendum provision that required Ada to repair the roof as a condition of Keenan Packaging's occupying the McDermott property. We also observe that Keenan Packaging was required by paragraph 15 of the lease to provide insurance, which insurance would cover, among other things, "property damage." Further, the lease included paragraph 10 stating that Keenan Packaging had examined and was satisfied with the physical condition of the premises, except as otherwise specified. Clearly, Keenan Packaging is not free to pick and choose among the clauses of the lease, accepting only those that are advantageous to it. See *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004). The lease, read as a

whole and in its plainest and clearest sense, provides that Ada is not responsible for damages to Keenan Packaging's personal property due to, among other things, water leakage. The district court did not err in failing to conclude that the lease was ambiguous and in failing to conclude that paragraph 14 was superseded, modified, or eliminated by other provisions of the lease. Keenan Packaging's assertions to the contrary are without merit.

*Gross Negligence and Wanton Misconduct.*

Keenan Packaging asserts that the district court erred in finding that Ada was not guilty of gross negligence and wanton misconduct in her failure to keep the roof of the building in good order and repair and to repair the roof where needed. Keenan Packaging argues that even if paragraph 14 of the lease is valid and enforceable, Ada's acts in failing to repair the roof constituted gross negligence.

The Nebraska Supreme Court has held that public policy prevents a party from limiting its damages for gross negligence or willful and wanton misconduct. *New Light Co. v. Wells Fargo Alarm Servs.*, 247 Neb. 57, 525 N.W.2d 25 (1994). In *New Light Co.*, the plaintiff's petition alleged that the defendant was grossly negligent in various regards with respect to its installation of a fire alarm system. The defendant generally denied the allegations of the petition and claimed that a clause of the parties' contract exculpated it from liability for the plaintiff's damages sustained in a fire. The Nebraska Supreme Court held that whether a particular exculpatory clause in a contractual agreement violates public policy depends upon the facts and circumstances of the agreement and the parties involved. *Id.* In *New Light Co.*, the court concluded that the parties had not contemplated gross negligence and willful and wanton misconduct because the exculpatory clause made no mention of such activities. The court held that even if the exculpatory clause could be construed to include gross negligence and wanton and willful misconduct, such exclusion was prohibited by public policy. Because the court found no language in the agreement clearly expressing an intent to limit the defendant's liability for acts of gross negligence or willful and wanton misconduct, the court

concluded that the exculpatory clause did not affect the plaintiff's right to assert a cause of action based on such activity.

Unlike the plaintiff in *New Light Co.*, Keenan Packaging in the instant case did not plead gross negligence and wanton misconduct in its petition. The Nebraska Supreme Court has previously held, in the context of a contract dispute, that a pleading has two purposes: (1) to eliminate from consideration contentions which have no legal significance and (2) to guide the parties and the court in the conduct of cases. *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003). Pleadings frame the issues upon which the cause is to be tried and advise the adversary as to what the adversary must meet. *Id.* The issues in a given case will be limited to those which are pled. *Id.* We observe that the present consolidated cases were filed under Nebraska's old code pleading system and before the implementation of Nebraska's new civil pleading rules. See Neb. Ct. R. of Pldg. in Civ. Actions 1 (rev. 2004) (new rules of pleading apply to civil actions filed on or after January 1, 2003). The court in *Spanish Oaks* noted that "[w]hile . . . judicial efficiency might be promoted if courts were to, sua sponte, determine questions raised by the facts but not presented in the pleadings, that efficiency would come at the expense of due process." 265 Neb. at 149, 655 N.W.2d at 404. Compare, *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 13 Neb. App. 459, 696 N.W.2d 149 (2005) (case filed under new rules of pleading holding that when issues not raised by pleadings are tried by express or implied consent of parties, issues shall be treated in all respects as if they had been raised in pleadings); *Schnell v. Schnell*, 12 Neb. App. 321, 673 N.W.2d 578 (2003) (issues not raised in pleadings may be reached when record shows both parties were on notice of issue and both parties fully litigated issue).

Even assuming in the present case that both parties were on notice and fully litigated the issue of gross negligence and wanton misconduct, and despite Keenan Packaging's failure to plead the issue, we see nothing in the record to suggest that the district court's factual finding on this issue was clearly wrong. The district court in the present case held that this "is not a case where [Ada] was guilty of gross negligence or willful and

wanton misconduct as regards roof repairs." The court observed that the McDermotts attempted to repair the roof problem several times during Keenan Packaging's tenancy. Gross negligence is great or excessive negligence, which indicates the absence of even slight care in the performance of a duty. *Bennett v. Labenz*, 265 Neb. 750, 659 N.W.2d 339 (2003). In order for an action to be willful or wanton, the evidence must prove that a defendant had actual knowledge that a danger existed and that the defendant intentionally failed to act to prevent harm which was reasonably likely to result. *Drake v. Drake*, 260 Neb. 530, 618 N.W.2d 650 (2000). The district court was not clearly wrong in finding that the McDermotts' actions with regard to the roof repair did not rise to the level of gross negligence or willful or wanton misconduct. Keenan Packaging's assignment of error is without merit.

*Keenan Packaging's Damages.*

Finally, Keenan Packaging asserts that the district court erred in failing to award Keenan Packaging damages sustained because of the leaky roof on the McDermott property. Given our resolution of Keenan Packaging's other assignments of error, we need not address this error. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *Burke v. McKay*, 268 Neb. 14, 679 N.W.2d 418 (2004).

*Constructive Eviction.*

Ada, as trustee, asserts on cross-appeal that the district court erred in finding that Keenan Packaging had a legitimate reason for withholding rent. Keenan Packaging alleged in its answer to Ada's petition that the leased premises were untenantable due to the failure of the roof and that such untenantability excused it from its obligation to pay rent. Ada argues that Keenan Packaging's claim of untenantability constitutes a defense to Ada's claim for rent only if there was a constructive eviction.

To constitute a constructive eviction, it must be shown that the premises were rendered unfit for occupancy for the purposes for which they were leased or were rendered unfit so as to deprive lessee of the beneficial use of the premises. *Middagh v. Stanal Sound Ltd.*, 222 Neb. 54, 382 N.W.2d 303 (1986). See,

also, *May v. Marijo Corp.*, 207 Neb. 422, 299 N.W.2d 433 (1980); *Kimball v. Lincoln Theatre Corporation*, 129 Neb. 446, 261 N.W. 842 (1935) (*Kimball II*); *Kimball v. Lincoln Theatre Corporation*, 125 Neb. 677, 251 N.W. 290 (1933) (*Kimball I*). The Nebraska Supreme Court has held that any disturbance of the tenant's possession by the landlord or by someone under his authority, whereby the premises are rendered unfit for occupancy for the purposes for which they were demised or the tenant is deprived of the beneficial enjoyment of the premises, amounts to a constructive eviction, if the tenant abandons the premises within a reasonable time. *Kimball I*.

Ada argues that Keenan Packaging did not abandon the premises as required, in that it only vacated the premises after being compelled to do so by a notice to quit for nonpayment of rent. Keenan Packaging acknowledges the requirement that it abandon the premises in order to successfully claim constructive eviction, but it argues that it abandoned the premises in a reasonable time because it was induced to remain on the premises by the McDermotts' assurances that the roof would be repaired. The parties both rely on the following:

> Under the covenant to repair or to improve the premises during the term, ordinarily used in leases of real estate, the tenant may not retain possession and assert a breach of the covenant as a complete defense to an action for rent. Whatever right a tenant may have to terminate his or her liability for *future rent* by abandoning the premises on the ground that they are uninhabitable as a result of the breach of the landlord's covenant to repair is waived by remaining in possession after the breach, unless the tenant was induced to remain by the representations of the landlord that the defects would be repaired.
>
> A mere declaration that the lessee does not intend to continue to occupy the premises, or even a formal tender of possession to the landlord, does not constitute an abandonment within the meaning of any principle of law that will permit a tenant to avoid liability for rent through abandoning the premises upon the breach by the landlord of his or her covenant to repair or to improve the premises. In order for the tenant to avoid liability for rent by asserting a claim

of abandonment of the premises resulting from the breach of the landlord's covenant to repair, the tenant must actually surrender the premises.

(Emphasis supplied.) 49 Am. Jur. 2d *Landlord and Tenant* § 777 at 638-39 (1995). Ada also notes the following:

An act of a landlord which deprives the tenant of that beneficial enjoyment of the premises to the tenant is entitled under the lease, causing the tenant to abandon the premises, amounts to a constructive eviction and *suspends liability for rent accruing subsequent to the abandonment.* So, where a landlord, without being guilty of an actual physical disturbance of the tenant's possession, is guilty of such acts as will justify or warrant the tenant in leaving the premises, and the tenant abandons them, then the circumstances which justify such abandonment, taken in connection with the act of abandonment itself, will support a plea of eviction as against an action for rent.

The rule that in order for the tenant to be entitled to assert a constructive eviction, the tenant must abandon the premises applies where the tenant seeks to assert a constructive eviction as a defense to an action for rent. The view generally taken by the authorities is that in order for the lessee to rely upon constructive eviction as a ground for avoiding payment of the rent contracted for, the lessee must surrender or abandon the leased premises. If the tenant makes no surrender of the possession, but continues to occupy after the commission of the acts which would justify leaving, the tenant will be deemed to have waived the right to abandon. It would be unjust to permit the tenant to remain in possession and then escape the payment of rent by pleading a state of facts which, although conferring a right to abandon, had been unaccompanied by the exercise of that right. The rules stated elsewhere as to the time within which a tenant must abandon possession in order to be entitled to assert a constructive eviction apply in determining the right to assert a constructive eviction as a defense to an action for rent.

(Emphasis supplied.) *Id.*, § 734 at 602-03.

While the district court did not make a specific finding that the McDermotts' failure to repair the roof amounted to a

constructive eviction of Keenan Packaging, the court stated, in support of its finding that Keenan Packaging is not liable for the unpaid rent from March to August 1999, that "Keenan [Packaging] had a legitimate reason for withholding rent and vacating the premises because of water damage to [its] products and equipment." We interpret this finding to mean that Keenan Packaging was constructively evicted from the premises by virtue of the McDermotts' failure to repair the roof. Further, implicit in the district court's ruling is a finding that Keenan Packaging abandoned the premises within a reasonable time. The record supports such a finding as well, in that Keenan was induced to remain on the premises for some time after Ada's breach of the lease by the McDermotts' representations that the roof would be repaired. The district court was not clearly wrong in finding that the McDermotts' failure to repair the roof amounted to a constructive eviction of Keenan Packaging and that Keenan Packaging abandoned the premises within a reasonable time of Ada's breach.

The district court determined that Keenan Packaging was not liable for rent that accrued prior to the abandonment of the premises. We can find no support for such a position in Nebraska law. In our research, we have found Nebraska cases wherein the lessee of certain real property claimed it was constructively evicted from the leased property and that such constructive eviction absolved it from paying rent after the date of its abandonment of the property. See, *Gehrke v. General Theatre Corp.*, 207 Neb. 301, 298 N.W.2d 773 (1980) (lessee responsible for balance of rent due under lease after lessee vacated premises, because court found no constructive eviction); *Kimball I* (liability for rent subsequent to abandonment not actually discussed because court found lessee was not constructively evicted). See, also, *May v. Marijo Corp.*, 207 Neb. 422, 299 N.W.2d 433 (1980) (affirming jury award of rent due until expiration of lease in constructive eviction case, but not specifying point from which award of rent began). We have found no Nebraska cases which discuss the liability for rent prior to the abandonment of the premises occasioned by constructive eviction. We believe the authority contained in 49 Am. Jur. 2d, *supra*, is a correct analysis of the law in the area of constructive

eviction. We therefore hold that in order for a lessee to rely upon constructive eviction as a ground for avoiding payment of the rent contracted for, the lessee must surrender or abandon the leased premises. We further hold that the constructive eviction of a lessee suspends the lessee's liability for rent accruing subsequent to the abandonment.

We find that the district court erred in excusing Keenan Packaging from the payment of $19,814.19 for rent which accrued prior to Keenan Packaging's abandonment of the premises, i.e., rent for March through August 21, 1999. Accordingly, we reverse that portion of the district court's judgment which dismissed Ada's petition and remand the cause to the district court with instructions to enter judgment in favor of Ada and against Keenan Packaging in the sum of $16,324.19—an amount equal to the unpaid rent which accrued prior to Keenan Packaging's abandonment of the premises less Keenan Packaging's security deposit of $3,490.

## CONCLUSION

The district court incorrectly concluded that Ada's breach absolved Keenan Packaging from its obligation to pay rent while it continued to occupy the premises. Accordingly, we reverse that portion of the district court's judgment which dismissed Ada's petition and remand the cause to the district court with directions to enter judgment in favor of Ada and against Keenan Packaging in the sum of $16,324.19—an amount equal to the unpaid rent which accrued prior to Keenan Packaging's abandonment of the premises less Keenan Packaging's security deposit. We affirm the district court's order in all other respects.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.